**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2006-KA-02149-SCT**

*GREGORY SMITH a/k/a JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2006 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENJAMIN A. SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE B. WOOD |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/26/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     In the Circuit Court of Lauderdale County, a jury found Gregory Smith guilty of

capital murder, and he was sentenced to life imprisonment without the possibility of parole.

Smith filed a motion for judgment notwithstanding the verdict and a motion for a new trial,

both of which the trial court denied.  Smith appeals.

**FACTS**

¶2.     In the early morning hours of May 29, 2004, Jeremy Scott was shot four times in the

head in the Meridian home of relatives.  A 911 call was placed around 2:49 a.m., to which

the Meridian Police Department ("MPD") responded shortly thereafter. Scott died from the gunshot wounds to the head.

¶3.  Assigned to investigate the murder one year after it occurred, Detective Andy Havard, MPD criminal investigator, learned from Scott's mother that Scott had purchased a cell phone about two weeks before he was murdered. The detectives subpoenaed the cell phone records for calls made from Scott's phone from 2:45 a.m. on May 29, 2004, through the next three days. Because the phone was used post-mortem, the detectives concluded that persons in the house during or after Scott's death took his phone. Through investigation related to the phone records, the detectives determined that Anthony Evans, Lewis Thomas Green, and Gregory Smith were suspects.

## PROCEDURAL HISTORY

¶4.  A grand jury in Lauderdale County indicted Evans, Green, and Smith for armed robbery and capital murder. The trial court granted Evans's request for severance from his codefendants. Smith also filed a motion for severance. However, the motion was neither noticed for a hearing nor ruled on by the trial court.

¶5.  At the joint trial of Smith and Green, six witnesses testified. Jason McElhenney, a former MPD criminal investigator, testified about his observations at the scene of the crime. Dr. Steven Hayne, a pathologist who performed an autopsy on Scott, described Scott's gunshot wounds and opined as to Scott's cause of death. Bernice Collins, former live-in girlfriend of Green, testified that Evans, Smith, and Green were regularly together. She said that she was with Smith and Green until about 1:00 a.m, less than two hours before the

2

murder, and that when she saw Green again around 5:00 a.m., Green told her Evans was with him. MPD Officer Joe Hoadley, initially the lead detective on the case, testified about his investigation, which did not lead to the identification of any suspects. Detective Havard testified about the fruits of his investigation, which included his interrogation of Smith and Green. Another MPD criminal investigator, Detective J.C. Boswell, who assisted Havard in the interrogation of Smith and Green, also testified about statements made by Smith and Green during their respective interrogations.

¶6. Detectives Havard and Boswell testified that they interrogated Smith on three occasions: December 8, 2005; December 13, 2005; and February 9, 2006. On each occasion, Smith was incarcerated on other charges. Smith's apparent knowledge of the murder expanded with each interview, culminating in his confession during the February 9 interview. Detective Havard testified that Smith stated in the final interrogation that he and Green had been at the scene of the crime, and that he had been a lookout. According to Havard, Smith said they had gone in to commit robbery. Smith also said Green had shot Scott. The State entered disc recordings of Smith's interrogations as well as transcripts of those recordings. Green objected numerous times to the testimony regarding Smith's statements on the grounds of confrontation and hearsay. The trial court eventually granted Green a continuing objection.

¶7. Detectives Havard and Boswell testified that they had interrogated Green on two occasions: October 27, 2005, and March 2, 2006. Green also was interrogated while in custody on other charges. At the first interrogation, Green denied knowing anything about

the murder. At the second interrogation, which, according to the detectives, lasted about forty-five minutes, the detectives began to record Green's interrogation; however, after the detectives played for Green the portion of Smith's interrogation in which Green was named as an accomplice, Green requested that the recorder be stopped, and the detectives complied. After this request, the detectives testified that Green admitted he and Smith had been present at the murder. Detective Havard testified that Green stated that he and Smith had gone to rob Scott and that Green had had a gun. Detective Havard further testified that Green said he had searched the house while Smith had watched the front door, and Green said he had heard three to five shots fired while he was searching the house. According to the officers, Green also said he had taken drugs and money from the house. Green told the officers that Smith had a chrome handgun, and that a small gun like a .380-caliber and a long handgun had been involved. Smith objected numerous times to the officers' testimony regarding Green's statements on the grounds of confrontation and hearsay. The trial court overruled each objection.

¶8.     After the State rested, the trial court called each defendant individually and explained to him his right to testify or not testify. Each defendant declined to testify, and neither put on any evidence. After a three-day trial, both Smith and Green were convicted of capital murder and sentenced to life imprisonment without the possibility of parole.

¶9.     Smith filed post-trial motions, which were denied. Smith appeals his conviction.[1]

_____

[1]Green also appealed but later moved to withdraw his appeal, and that motion was granted by order of the Court dated June 5, 2008.

4

**DISCUSSION**

¶10.    Smith raised two issues on appeal:  (1) Whether Smith was irreparably and unfairly prejudiced by the admission of character evidence of prior bad acts, including prior arrests, charges, bond hearings, and other unrelated crimes;  and (2) whether Smith was denied a fair trial due to the trial court's failure to sever the trials of Smith and Green.  Further,  Smith implicitly avers a Confrontation Clause violation in his severance issue where he argues "[a] separate trial was necessary to ensure a fair determination of Smith's guilt or innocence without Green's hearsay and confrontational statements."  Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure states:  "A statement shall identify the issues presented for review."  The rule also says "the court may, at its option, notice a plain error not identified or distinctly specified."  M.R.A.P. Rule 28(a)(3).  Under the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's "fundamental, substantive right." *See Debrow v. State*, 972 So. 2d 550 (Miss. 2007) (recognizing as plain error that the admission of evidence of defendant's blood alcohol content was in violation of his Sixth Amendment right to confrontation); *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996) (quoting *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989) ("It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice")). Plain-error review is properly utilized for "correcting obvious instances of injustice or misapplied law." *Newport v. Fact Concerts*, 453 U.S. 247, 256, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981).  Because we find that a violation of the Confrontation Clause is a violation of a "fundamental, substantive right," we

5

also will address whether Green's statement, which implicated Smith, violated Smith's right to confrontation, as provided by the Sixth and Fourteenth Amendments to the United States Constitution, and if so, whether such error requires reversal.[2]

### I. Whether the Trial Court Committed Reversible Error in Admitting Character Evidence or Prior Bad Acts about Prior Arrests, Charges, Bond Hearings, and Other Unrelated Crimes.

¶11. Smith argues that the trial court erred when it admitted character evidence through Smith's own statements concerning prior arrests, charges, bond hearings, and other unrelated crimes. The State responds that Smith is procedurally barred from raising as error the admissibility of his statements as character evidence since he did not specifically object on that ground in the trial court.

¶12. This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review. *Jones v. State*, 962 So. 2d 1263, 1268 (Miss. 2007) (citing *Jones v. State*, 904 So. 2d 149, 152 (Miss. 2005)).

¶13. This Court has held "[a]n objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error." *Ross v. State*, 954 So. 2d 968, 987 (Miss. 1973). Further, we have held that "an objection on one or more

_____

[2]Smith objected to the confrontation error in trial court. To Detective Havard's testimony as to what Green said of Smith's involvement in the murder, Smith stated:

[Smith's Counsel]:Your Honor, we are going to object to anything – the same basis Mr. Stephenson had. I realize the Court has already overruled those objections, but it's definitely confrontational and also hearsay.
Court: Yes, sir. I understand. Overruled.

specific grounds constitutes a waiver of all other grounds." *Spicer v. State*, 921 So. 2d 292, 316 (Miss. 2006) (quoting *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 161-62 (Miss. 1999); *Morgan v. State*, 741 So. 2d 246, 253 (Miss. 1999) (citing *Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973)). This Court noted in *Morgan* that an objection cannot be enlarged in the reviewing court to embrace an omission not complained of at trial. *Morgan*, 741 So. 2d at 253 (citing *McGarrh v. State*, 249 Miss. 247, 276, 148 So. 2d 494, 506 (1963)); *Stringer*, 279 So. 2d at 158-59. This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider. *Montgomery v. State*, 891 So. 2d 179, 187 (Miss. 2004); *Stringer*, 279 So. 2d at 158.

¶14. When Smith's statements were offered into evidence, Smith joined an objection made by Green on the grounds of hearsay and the right to confrontation. Smith failed to object on the ground he raises on appeal – improper character evidence. Smith waived any argument concerning character evidence when he failed to raise it in the trial court.

**II.    Whether the Trial Court Committed Reversible Error in Not Severing the trials of Gregory Smith and Lewis Green.**

¶15. Smith also asserts that the trial court committed error by failing to sever the trials of Smith and codefendant Green. The State argues that since Smith filed a motion for severance but never set the motion for hearing, this assignment also is procedurally barred.

¶16. Uniform Rule of Circuit and County Court Practice 9.03 places in the discretion of the trial judge the grant or refusal of severance of defendants in cases not involving the death

7

penalty.[3] This Court has held that, even when a defendant has a right to a separate trial from that of a codefendant, "this right, as any other fundamental and absolute right, can be waived." *Smith v. State*, 724 So. 2d 280, 307 (Miss. 1988). Uniform Rule of Circuit and County Court Practice 2.04 states:

> It is the duty of the movant, when a motion or other pleading is filed, including motions for a new trial, to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of trial in the discretion of the court.

This Court has repeatedly held that "it is the responsibility of the movant to obtain a ruling from the court on motions . . . and failure to do so constitutes a waiver." *Evans v. State*, 725 So. 2d 613, 708 (Miss. 1997) (quoting *Johnson v. State*, 461 So. 2d 1288, 1290 (Miss.1984)). "Issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal." *Tate v. State*, 912 So. 2d 919, 928 (Miss. 2005) (citing *Wilcher v. State*, 479 So. 2d 710, 712 (Miss. 1985)).

¶17. We find no record of a ruling by the trial court on Smith's motion for severance nor any evidence that the motion was noticed for hearing by the defendant. By failing to pursue a hearing or ruling on the motion from the trial court, Smith effectively abandoned the motion and waived this issue for appeal.

> **III. Whether the Trial Court Committed Reversible Error in Admitting Green's Statement Against Smith.**

---

[3]Although this is a capital murder case, the State did not seek the death penalty.

¶18. This Court reviews de novo a Confrontation Clause objection. *See **Hayden v. State***, 972 So. 2d 525, 535-36 (Miss. 2007) (citing ***Baker v. State***, 802 So. 2d 77, 80 (Miss. 2001)).

¶19. The United States Supreme Court has noted:

> [there] are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in the expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

***Lee v. Ill.***, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986) (quoting ***Pointer v. Texas***, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)). The right to confrontation:

> (1) insures that the witness will give his statements under oath -- thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility.

***Lee,*** 476 U.S. at 540 (quoting ***California v. Green***, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)). "[The] truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." ***Lee***, 476 U.S. at 541.

¶20. In ***Crawford v. Washington***, the United States Supreme Court held that testimonial statements of witnesses absent from trial can be admitted, in accordance with common law, *only* where the declarant is unavailable *and* the defendant had a prior opportunity to cross-examine. ***Crawford v. Washington***, 541 U.S. 36, 68, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d

9

177 (2004) (emphasis added). The Supreme Court distinguished nontestimonial hearsay from testimonial hearsay. *Id.* Nontestimonial hearsay is subject to evidentiary rules concerning reliability rather than being subject to scrutiny under the Confrontation Clause. *Id.* However, testimonial hearsay must be filtered by the Confrontation Clause. *Id.* at 53.

¶21. The Court declined in *Crawford* to define "testimonial" statements, but noted that the term, at a minimum, includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to *police interrogations*." *Id.* at 68 (emphasis added). Subsequently, the Court addressed the need to "determine more precisely which police interrogations produce testimony." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). In *Davis*, the Court further distinguished statements made in response to police interrogations, explaining that:

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. Accordingly, the statements made during police interrogation in the present case are unquestionably testimonial and thus would be admissible only if the declarant was unavailable and the defendant had a prior opportunity to cross examine. *See Crawford*, 541 U.S. at 52, 68.

¶22. *Crawford* cites *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L. Ed. 2d 476 (1968), for the proposition that the admission of a codefendant's statement

10

against a defendant without the opportunity to cross-examine the codefendant is a violation of the Confrontation Clause. *Crawford*, 541 U.S. at 57. Following *Bruton*, this Court has held that "the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a codefendant (implicating the defendant) during the state's case-in-chief, since it could not be known whether the codefendant would testify after the state rested." *Clark v. State*, 891 So. 2d 136, 140 (Miss. 2004) (quoting *Brown v. State*, 340 So. 2d 718, 721 (Miss. 1976)).

¶23. The trial court allowed the introduction of Smith's and Green's statements based on the reliability test set forth in *Seales v. State*, 495 So. 2d 475 (Miss. 1986). In *Seales*, at the joint trial of the defendants, out-of-court statements of each defendant made to officers while in police custody were admitted into evidence in the State's case-in-chief, relying on the *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. CT. 2531 (1980), "indicia of reliability" test. Under this test, the statement of a nontestifying codefendant was admissible when the declarant was unavailable and the statement bore adequate "indicia of reliability." *Seales*, 495 So. 2d at 480. *Roberts* held that reliability is sufficient "where the evidence falls within a firmly rooted hearsay exception" or is shown to contain "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66. *Seales*, in following *Roberts*, determined that the admission of the statements in that case was not reversible error, stating "'particularized guarantees of trustworthiness' are present, that is, that the statements corroborate one another on the core details of the crime." *Seales*, 495 So. 2d at 479. Analogizing *Seales* to the case

11

at hand, the trial court found the statements reliable since "both Defendants, basically, corroborated each others' story, generally, until you get to who the shooter was."

¶24. However, *Seales* and *Roberts* are in conflict with *Crawford* as they relate to the admissibility of testimonial statements. *Crawford* held that the *Roberts* reliability test, i.e., whether it falls under a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness," strays unacceptably from the original intention of the Confrontation Clause. *Crawford,* 541 U.S. at 60. The unpardonable vice of the *Roberts* test is "its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* at 63. The Court found that, under the test laid out in *Roberts*, trial courts continued routinely to admit accomplice confessions implicating the accused and other sorts of plainly testimonial statements. *Id.*

¶25. As to the *Roberts* test, the Supreme Court concluded that the admission of statements upon a mere finding of reliability failed to meet the core concerns of the Confrontation Clause and failed to protect against paradigmatic confrontation violations. *Id.* at 60.

> [w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability.". . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

*Id.* at 61.

12

¶26.    *Crawford* holds that when dealing with testimonial evidence, a finding of reliability does not create an exception to the Confrontation Clause. *Crawford*, 541 U.S. at 61. "Where testimonial statements are at issue, the *only* indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69 (emphasis added). We overrule *Seales* and its progeny[4] to the extent that they allow admission of testimonial statements when found to be reliable under the "indicia of reliability" test in the absence of cross-examination. We decline to address the applicability of *Seales* to nontestimonial statements.

¶27.    The trial court admitted the statements and attempted to address any confrontational issues by giving a cautionary instruction. With regard to Green's statements, jury instruction C-16 stated:

> [t]he court instructs the jury that statements attributed to Lewis Green have been admitted into evidence. The court instructs the jury that you are to disregard any such statement regarding Gregory Smith and his alleged involvement in an armed robbery and murder that is the subject of this trial. You are further instructed to disregard any other statement attributed to Lewis

---

[4] The applicable progeny of *Seales* includes *Harrington v. State*, 793 So. 2d 626 (Miss. 2001) (finding after examination of an alleged confrontation clause error that the statements were inadmissible since they did not satisfy the *Roberts* reliability test as set out in *Seales*); *Smith v. State*, 754 So. 2d 1159 (Miss. 2000) (same); *Williams v. State*, 667 So. 2d 15, 21 (Miss. 1996) (if the statement bears particularized guarantees of trustworthiness so that "the test of cross-examination would be of marginal utility," the statement is admissible at trial); *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987) (" if the trial court determines at a suppression hearing prior to trial that the statements contain 'particularized guarantees of trustworthiness' . . . that is, that the statements corroborate one another on the core details of the crime," then the statement is admissible); *Mitchell v. State*, 495 So. 2d 5, 9 (Miss. 1986) (the *Bruton* presumption against admission of a co-defendant's statement against a defendant without the opportunity to cross-examine the co-defendant may be rebutted so as to meet Confrontation Clause standards if it is supported by a showing of particularized guarantees of trustworthiness).

13

Green regarding Gregory Smith as evidence in this case against Gregory Smith. You are not permitted to use any statement attributed to Lewis Green in regard to Gregory Smith as evidence in this case against Gregory Smith.

¶28. The United States Supreme Court has rejected a jury instruction as a cure for the violation of the Confrontation Clause, explaining:

> A defendant is entitled to a fair trial but not a perfect one. It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, . . . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Bruton*, 391 U.S. at 135-36 (internal quotations and citations omitted). *Bruton* found the jury instruction insufficient to cure a Confrontation Clause violation and reversed the petitioner's conviction because of "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt." *Bruton*, 391 U.S. at 126. This Court has followed *Bruton*. *See e.g., Harris v. State*, 861 So. 2d 1003, 1022 (Miss. 2003) (citing *Bruton* for the proposition that "where a codefendant's statement is introduced at a joint trial which powerfully implicates the defendant in a crime, a jury instruction or redactions which naturally suggest the defendant's

14

name has been removed is not sufficient protection of the defendant's right to confront his accuser where the codefendant does not take the stand and subject himself to cross-examination by the defendant").

¶29. In accordance with **Bruton**, this Court continues to hold that a violation of the Confrontation Clause by admission of a codefendant's out-of-court statement which implicates the defendant in a crime cannot be cured by the granting of a cautionary instruction such as the ones entered in this case.

¶30. Having determined that neither through establishment of reliability under **Roberts** and **Seales,** nor through the issuance of a jury instruction, were Green's statements properly admitted, we must finally determine whether, as the State asserts, the Confrontation Clause violation was harmless error. *See **Delaware v. Van Arsdall**,* 475 U.S. 673, 674, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (vacating and remanding the case for harmless-error analysis where, though the trial court committed a Confrontation Clause violation, the Delaware Supreme Court erred "when it [rejected the state's argument and] declined to consider whether [the trial court] ruling was harmless in the context of the trial as a whole").

¶31. The United States Supreme Court has explained that "a defendant is entitled to a fair trial but not a perfect one," for there are no perfect trials. **Brown v. United States**, 411 U.S. 223, 231, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) (quoting **Bruton**, 391 U.S. at 135 (quoting **Lutwak v. United States**, 344 U.S. 604, 619, 73 S. Ct. 481, 97 L. Ed. 593 (1953))). While "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," **Chapman v. California**, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed.

15

2d 705 (1967), "most constitutional errors can be harmless." *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). The Supreme Court has recognized a limited class of fundamental constitutional errors, "structural errors," that are not subject to harmless-error analysis and require automatic reversal. *Neder*, 527 U.S. at 7 (citing *Fulminante*, 499 U.S. at 309). However, for all other constitutional errors, reviewing courts must apply harmless-error analysis in order to determine whether the error was harmless "beyond a reasonable doubt." *Neder*, 527 U.S. at 7 (citing *Chapman*, 386 U.S. at 24). "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 681. Once the constitutional error has been established, the burden is on the State to demonstrate the error is harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 296.

¶32. Although this Court did hold in *McCulloch v. State*, 194 Miss. 851, 855, 13 So. 2d 829 (Miss. 1943), that "[t]he violation of a constitutional right can not be harmless error," the United States Supreme Court later explained in *Chapman* the applicability of harmless-error analysis to constitutional violations. In accordance with *Chapman*, this Court has recognized that the admission of statements made by a non-testifying defendant in violation of the Confrontation Clause can be harmless error. *Clark*, 891 So. 2d at 141; *Bynum v. State*, 929 So. 2d 312, 314-15 (Miss. 2006) (finding beyond a reasonable doubt that the trial court's error in admitting the co-defendant's statement was harmless). *Clark* followed *Brown*

16

*v. United States*, which held that admission into evidence of a statement made by a non-testifying codefendant – a **Bruton** error – is harmless where "[t]he testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." **Brown**, 411 U.S. at 231; **Clark**, 891 So. 2d at 141. *See **Haynes v. State**, 934 So. 2d 983, 991 (Miss. 2006) (This Court has held "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.")

¶33.    The State asserts that in the present case the facts constituting the elements of murder committed during the commission of a robbery were established by overwhelming evidence and through the use of proper means; thus, the error of admitting Green's statements was harmless. Smith was charged with capital murder committed during the commission of a robbery. Mississippi Code Annotated § 97-3-19(2)(e) (Rev. 2006) defines capital murder as:

> (2)  The killing of a human being without the authority of law by any means or in any manner will be capital murder in the following cases:

. . . .

> (e)  When done with or without any design to effect death, by any person engaged in the commission of the crime of . . . *robbery* . . . or in any attempt to commit such felonies . . . .

(emphasis added). The underlying crime charged in this case was robbery. The elements of robbery are: "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence." **Walker v. State**, 913 So. 2d 198, 223 (Miss. 2005) (quoting **Caldwell v. State**, 481 So. 2d 850, 853 (Miss. 1985)).

17

¶34. The State argues that the facts constituting the elements of murder committed during the commission of a robbery were established by overwhelming evidence and through the use of proper means.

¶35. Outside of Green's erroneously admitted statements, the only evidence that ties Smith to the crime are the statements Smith made during his interrogation which was presented to the jury through the disc recordings and transcripts of those interrogations. While we have determined that Smith's statement would have been inadmissibile against Green, it is admissible against Smith himself. "[W]hile *Crawford* certainly prohibits the introduction of a codefendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton*, *Richardson* [*v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)], and *Gray* [*v. Maryland*, 523 U.S. 185, 188, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998)]." *United States v. Ramos-Cardenas*, 524 F.3d 600, 609-10 (5th Cir. 2008). *See also United States v. Rodriguez-Duran*, 507 F.3d 749, 768-70 (1st Cir. 2007) (under *Crawford*, in a joint trial, even though a defendant's statement is inadmissible against codefendants, it can be admissible as to him); *Bruton*, 391 U.S. at 127 ("[Bruton's codefendant's] oral confessions were in fact testified to, and were . . . legitimate evidence against [his codefendant] and to that extent [were] properly before the jury during its deliberations").

¶36. Smith told Havard and Boswell during interrogation that he went to the house where Scott was murdered in order to commit robbery, that he acted as the lookout, that Green shot

Scott, and that he received some of the stolen money. We note that Smith made no effort to suppress his own statements and the only objection made to the introduction of his statement was his joining Green's objection on the grounds of hearsay and confrontation. No objection was made which would challenge either the truthfulness, or the voluntariness, or the reliability of Smith's statements. Smith's confession was the most probative and damaging evidence admitted against him, and it constituted direct evidence of the facts related to Scott's murder. Smith's own statements concerning his participation in the robbery and murder of Scott were uncontradicted and unchallenged. Therefore, we find that the evidence in the record was overwhelming and was sufficient to support the jury's verdict, and that the introduction of Green's statement was harmless beyond a reasonable doubt.

## CONCLUSION

¶37.    We find that the issues of character evidence and severance are procedurally barred. Further, even considering the violation of Smith's constitutional right under the Confrontation Clause, we find that the trial court's admission of Green's statement was harmless error. Accordingly, we affirm the judgment convicting Smith of capital murder and the resulting sentence.

¶38.    **COUNT I: CONVICTION OF ROBBERY BY USE OF A DEADLY WEAPON, AFFIRMED. APPELLANT RECEIVED NO SENTENCE ON COUNT I, THAT OFFENSE BEING ENCOMPASSED IN COUNT II. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE IS CONSECUTIVE TO ANY OTHER SENTENCE AND THIS APPELLANT SHALL BE ELIGIBLE FOR PAROLE, BUT UNDER 47-7-3 MCA, THIS SHALL BE WITHOUT PAROLE CONSIDERATION.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.**

**GRAVES, JUSTICE, DISSENTING:**

¶39. The majority finds that the trial court's admission of Smith's non-testifying co-defendant's statement was in violation of Smith's right to confrontation, and then finds that, while the admission of such evidence did violate Smith's constitutional right to confrontation, the error was harmless. In light of the lack of evidence in the instant case, I cannot agree with the majority's determination that the violation of Smith's constitutional right to confrontation was mere harmless error. Therefore, I respectfully dissent.

¶40. Such a violation of a defendant's constitutional right to confrontation is considered harmless error only when "testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence *properly* before the jury." *Brown v. United States*, 411 U.S. 223, 231, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) (emphasis added). Furthermore, "[h]armless errors are those 'which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.'" *Bynum v. State*, 929 So. 2d 312, 314 (Miss. 2006) (citing *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). *Brown* is an example of such an instance.

¶41. In *Brown*, the defendants were charged with and convicted of transporting stolen goods and of conspiracy to transport stolen goods in interstate commerce. *Brown*, 411 U.S.

20

at 224. The trial court erred in admitting police testimony as to statements made by a co-defendant implicating the defendant in the crimes charged, even though these statements were made out of the defendant's presence. *Id*. at 230-31. Despite the **Bruton** error, the evidence which was properly before the jury could be considered overwhelming. **Bruton v. United States,** 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L. Ed. 2d 476 (1968). In **Brown**, stolen merchandise which was seized from a co-conspirator's store was received in evidence. Police-officer eyewitnesses testified and fully described their observations of defendants leaving the warehouse from which the goods were stolen while the defendants were in possession of stolen goods; twenty photographs of the crime in progress were admitted into evidence; and incriminating testimony was given by the owner of the service station, from whom petitioners had rented trucks used in the thefts. Also, five witnesses testified they had seen petitioners unloading boxes from a truck late at night and carrying the boxes into the co-conspirator's store, where the stolen goods were seized. *Id*. at 226.

¶42. In the instant case, Scott's cause of death was established by the testimony of Dr. Hayne. However, evidence of the remaining elements of the crime of which Smith was convicted were supplied solely by the statements of the defendants. Detective Havard testified that he determined that Smith was a suspect through cellular phone records of the victim. These phone records were never entered into evidence. There was no testimony from any witness which tied Smith to the phone. There was no evidence that Scott's cellular phone was ever recovered. Further, no evidence was presented from any eyewitnesses at the crime scene. No persons who actually collected evidence or performed any evidentiary tests

21

were called as witnesses. Four .380-caliber shell casings were found near the body, but were never matched to a particular gun. Absolutely no physical evidence was presented to connect Smith to the crime.

¶43. Absent the statements of Smith and Green, there was no evidence – direct or circumstantial – which tied Smith to the murder. Therefore, it cannot be found that the statement was "merely cumulative of other overwhelming and largely uncontroverted evidence *properly* before the jury," when the only evidence offered before the jury which linked Smith to the crime were the two statements. *Brown*, 411 U.S. at 231. As the majority concedes, the severability issue is inextricably linked to the violation of Smith's constitutional right to confront the witnesses against him. "Smith implicitly avers a confrontation violation in his severance issue where he argues '[a] separate trial was necessary to ensure a fair determination of Smith's guilt or innocence without Green's hearsay and confrontational statements.'" If, as the majority finds and I agree, the admission of Green's statement violated Smith's right to confrontation, then it follows that Smith's statement was admitted in violation of Green's right to confrontation.

¶44. While Smith does not have proper standing to raise the constitutional rights of his co-defendant Green, this Court would be remiss to ignore that the two defendants were, in fact, tried together. Smith's statement was unquestionably inadmissible against Green. *See Bruton*, 391 U.S. at 126; *Clark v. State*, 891 So. 2d 136, 140 (Miss. 2004) (quoting *Brown v. State*, 340 So. 2d 718, 721 (Miss. 1976)); *Harris v. State*, 861 So. 2d 1003, 1022 (Miss. 2003) (citation omitted). It is impossible to extricate what happened at the trial and apply

22

it as if Smith were tried separately from Green. He was not. Smith's statement simply was inadmissible at Green's trial. Unfortunately, Green's trial was also Smith's trial. The majority relies on Smith's own statement, which also was erroneously admitted at trial in violation of Green's right to confrontation, to find that the erroneous admission of Smith's non-testifying co-defendant was "harmless beyond a reasonable doubt." Hence, the majority is ignoring what actually occurred during the trial. Furthermore, the majority's opinion is inconsistent with the United States Supreme Court holding in *Brown* that such violations of a defendant's constitutional right to confrontation are considered harmless error only when "testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence *properly* before the jury." *Brown*, 411 U.S. at 231 (emphasis added). Neither the statement of Green nor that of Smith was "properly" before the jury, as required by *Brown*.

¶45. Admittedly, had the cases been severed, Smith's statement would have been admissible against Smith. But there was a joint trial of Green and Smith. A finding that the admission of the statements of both Green and Smith violated their respective co-defendant's constitutional right to confrontation further evidences the fact that the violation of Smith's right to confrontation cannot be considered harmless error. If the erroneously admitted statements had not been offered at trial, the only evidence that the prosecution would have offered would have been the testimony of Dr. Hayne.

23

¶46. For the foregoing reasons, I would reverse Smith's conviction of capital murder and remand the case for a trial at which Smith would be permitted, in accordance with his constitutional rights, to confront all witnesses against him, consistent with this opinion.

**DIAZ, P.J., JOINS THIS OPINION.**