# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00591-COA

**ARQREUIS KORDELL POLK A/K/A ARGREUIS KORDELL POLK A/K/A "Q"**　　　　　　　　　**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT:　　　　　　　12/06/2023
TRIAL JUDGE:　　　　　　　　　HON. RANDI PERESICH MUELLER
COURT FROM WHICH APPEALED:　HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:　　　OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:　　　　OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:　　　　　　WILLIAM CROSBY PARKER
NATURE OF THE CASE:　　　　　　CRIMINAL - FELONY
DISPOSITION:　　　　　　　　　AFFIRMED - 08/05/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McDONALD AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.　A Harrison County Circuit Court jury convicted Arqreuis Kordell Polk of two counts of sexual battery of a child under the age of fourteen in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2020). The Harrison County Circuit Court sentenced Polk to serve two concurrent life sentences in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Polk argues that the circuit court erroneously limited his cross-examination of two trial witnesses. Finding no error, we affirm.

## FACTS

¶2.     A Harrison County grand jury had indicted Polk on two counts of sexual battery of a child under the age of fourteen. The indicted charges stemmed from multiple acts of sexual battery that Polk committed in 2019 against Bobby,[1] an eleven-year-old boy. At the time the sexual batteries occurred, Bobby resided with his father, who often worked out of state; his stepmother, Crystal, who met Polk at the bar where she worked; Polk, whom Crystal hired as a "nanny"; and multiple siblings.

¶3.     Prior to Polk's trial, the State filed a motion to prohibit or limit Polk from eliciting opinion testimony that Bobby was untruthful in relaying the events and facts that served as the basis for the indicted charges against Polk. Following a hearing, the circuit court granted the State's motion. Despite limiting Polk's questioning of Bobby, the circuit court explained that the defense would still be allowed to cross-examine Bobby on matters such as prior inconsistent statements.

¶4.     At trial, Bobby testified that the first instance of Polk's abuse occurred within a week of Polk moving into the same residence. Bobby described having to share a full-size bottom bunk bed with Polk. Bobby's brother, who is two years older than Bobby, slept in the same room on the top twin-size bunk. To the best of Bobby's knowledge, his brother was asleep during the instances of abuse, and Polk was always quiet. Bobby testified that as far as he was aware, there was never a time when his brother woke up, and Bobby believed his brother neither heard nor saw what was happening. Bobby described multiple instances of Polk inserting his penis into Bobby's mouth and Polk inserting his penis into Bobby's anus.

_____

[1] We use a pseudonym to protect the identity of the minor victim involved in this case.

2

According to Bobby, the instances were "too many to count" and all occurred in Bobby's bed or in the bathroom while Bobby was showering. Bobby stated that he was scared to ask his brother or anyone else for help because he was afraid of Polk. Bobby also stated that Polk often beat him and threatened to beat him if Bobby told anyone what was happening.

¶5. Bobby did not feel safe talking to Crystal about Polk's sexual abuse because Crystal also allegedly beat Bobby "too often" over the course of five years for any reasons she wanted. Bobby testified that Crystal would throw things at him, slap him, and punch him. Bobby finally confided in his older sister, who then told Crystal, but Crystal did not take any steps to stop the abuse. Bobby eventually began counseling and disclosed the sexual abuse to his counselor, Torey LaMothe, who contacted the police and Child Protection Services (CPS). Bobby was eventually removed from the home.

¶6. During Bobby's cross-examination, Polk's attorney asked if Bobby's older brother had ever accused Bobby of not telling the truth. The following exchange occurred:

Q. Okay. So when this was happening with your brother in the room, it's your testimony today that you would never ask for help or—I mean, where were you at, in the bottom bunk or the top bunk?

A. Bottom.

Q. And he was on the top bunk?

A. Yes, sir.

Q. [Your brother]?

A. Yes, sir.

Q. Okay. And would you ever ask him for like help or that you were—did you ever ask him for help?

> A. No, sir.
>
> Q. He never woke up?
>
> A. Not to my knowledge.
>
> Q. Okay. To your knowledge, has [your brother] ever accused you of not telling the truth?

¶7. The State objected that the defense's questioning lacked relevance. During the subsequent bench hearing, Polk's attorney argued that he sought to elicit testimony regarding Bobby's character trait for untruthfulness. After considering the parties' arguments, the circuit court sustained the State's objection that the line of questioning lacked relevance.[2]

¶8. The State also called Amy Stampley as a witness during its case-in-chief. Stampley testified that she was employed by the Stone County School District as a director of special services. The circuit court accepted Stampley as an expert in the field of individualized education programs (IEPs) and behavioral intervention plans for special-needs students. During the course of Stampley's cross-examination, Polk's attorney attempted to ask Stampley about whether Bobby had sold vapes to other students. The exchange occurred as follows:

> Q. Are you aware of—or I'm sorry. Has he been, to your knowledge, disciplined within the past year in school for something?
>
> A. For like speaking—well, he likes to talk sometimes to other kids and stuff about what's going on. He's got a lot of, I would say, like emotional stuff that he shares.

---

[2] Although not the basis for the circuit court's ruling, we note that the testimony Polk sought to elicit during Bobby's cross-examination also violated our evidentiary rules against the admission of hearsay. *See* MRE 801(c) (discussing statements that constitute inadmissible hearsay).

4

Q.      Like—but as far as if he were reported to the disciplinary authorities at the educational institutions, would you have information about that?

A.      I would.

Q.      So do you have—did you ever have information about him selling vapes to other students?

A.      I have not, no.

¶9.    Polk's line of questioning again drew a relevancy objection from the State. During the bench hearing that followed, Polk's attorney admitted that his question to Stampley was irrelevant. He explained, however, that he was trying find a way to cross-examine Stampley about information contained in Bobby's IEP packet. Polk's attorney stated he believed that Stampley, as an expert witness, could testify to the information in the IEP packet that pertained to any knowledge she had of Bobby's mental state. According to Polk's attorney, the IEP packet indicated that Bobby had "a problem with lying" and "a problem with telling stories that are not based on reality." As a result, Polk's attorney sought to elicit testimony from Stampley about instances where Bobby had expressed irrational fears and told unrealistic stories, such as seeing demons or seeing himself hanging from a tree. The State argued that such questions lacked relevancy because they not only amounted to "improper impeachment" but also attempted to elicit inadmissible hearsay.

¶10.   The circuit court noted that Bobby had already testified about the visions Polk's attorney mentioned. In addition, the circuit court noted that Polk's attorney sought to question Stampley about information outside her field of expertise that she had gained—not from her personal interactions with Bobby—but from reading other people's reports. After

considering the parties' arguments, the circuit court restricted Polk's questioning of Stampley's opinions about Bobby's behavioral issues to those within her field of expertise and based on personal knowledge she had of Bobby due to her dealings with him at school.

¶11. Following the circuit court's ruling, Stampley's cross-examination resumed with the following exchange:

> Q. Okay. Ms. Stampley, I'm trying to get back to where we were. So have you—when you deal with [Bobby], is it ever like an interview situation? Like not that it's recorded or anything, but is it ever like a one-on-one with him?
>
> A. Not really. I've never had a one-on-one with him. He's a part of his IEP committee. Once a kid turns 14, that's their transition age and so they're invited to all of their meetings. And so if I've had any conversations with [Bobby], it's been in those meetings.
>
> Q. Okay. So as far as dealing with [Bobby] on a personal level, have you had any—is there anything that you can recall as it relates to you and, you know, talking with him, getting to know him?
>
> A. Not outside of the IEP committee or just, you know, talking to his teachers or his support groups.
>
> Q. Okay. So you mostly deal with—and tell me if I'm wrong, but is it true that you mostly associate with other teachers and other faculty that have constant involvement with [Bobby]?
>
> A. Right.
>
> Q. Okay. Okay. And then you learn from them about his condition as it relates to IEP?
>
> A. Well, those are legal documents when they write the IEP, so I review those things and I review, you know, his IEPs because I've been trying to figure out how to help support him. I have participated in his meetings this year because his schedule had to change because he's just had a lot of trouble this year emotionally.

Q. Okay. And what all—as we're here today, what all is he currently diagnosed with?

A. He's currently diagnosed with ADHD, as far as the school district's records.

¶12. Following Stampley's testimony, both parties rested, and the jury began its deliberations. The jury convicted Polk of both counts of sexual battery of a child under the age of fourteen. The circuit court then sentenced Polk to serve two concurrent terms of life imprisonment in MDOC's custody. Polk moved for judgment notwithstanding the verdict or, alternatively, a new trial, which the circuit court denied. Aggrieved, Polk appeals.

## DISCUSSION

¶13. Polk argues that the circuit court erred in limiting his cross-examinations of Bobby and Stampley. As part of his theory of defense at trial, Polk attempted to establish that Bobby had a tendency to be dishonest or disconnected from reality. Polk contends that the trial testimony he sought to elicit from Bobby and Stampley was admissible under the Mississippi Rules of Evidence to demonstrate Bobby's character trait for untruthfulness. He therefore challenges the circuit court's decision to exclude or limit certain testimony on cross-examination. In addition, Polk asserts that in restricting his questioning of both Bobby and Stampley, the circuit court erroneously violated his Sixth Amendment rights to confront his accusers and present a defense.

### I. Relevancy Objection During Bobby's Cross-Examination

¶14. Polk asserts that during his cross-examination of Bobby, the circuit court erroneously sustained the State's objection as to lack of relevance. "[W]e review a trial court's decision

7

to admit or exclude evidence for abuse of discretion . . . ." *Davis v. State*, 399 So. 3d 966, 970 (¶12) (Miss. Ct. App. 2025) (quoting *Ross v. State*, 308 So. 3d 885, 889 (¶10) (Miss. Ct. App. 2020)). Issues regarding "[t]he relevancy and admissibility of evidence are well within the trial court's discretion, and reversal may be had only where that discretion has been abused." *Id.* (quoting *Ross*, 308 So. 3d at 889 (¶10)). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the case." MRE 401. "Rule 401 is construed broadly in favor of admitting evidence with even slight probative value." *Pugh v. State*, 270 So. 3d 949, 958 (¶34) (Miss. Ct. App. 2018) (quoting *Ross v. State*, 954 So. 2d 968, 993 (¶44) (Miss. 2007)). "Irrelevant evidence is not admissible." MRE 402.

¶15. Polk argues that during Bobby's cross-examination, his trial attorney merely asked about whether Bobby's older brother had ever "accused [Bobby] of lying about Polk's alleged mistreatment." Despite Polk's assertions on appeal, we find his characterization of the line of questioning pursued during Bobby's cross-examination is misleading. Polk's attorney actually asked Bobby, "To your knowledge, has [your brother] ever accused you of not telling the truth?" Polk argues that the intent of this question was to elicit testimony that Bobby's older brother had accused Bobby of being untruthful about Polk's abuse, which was a "fact of consequence in determining the case" against Polk. *See* MRE 401. Regardless of intent, however, the question asked during Bobby's cross-examination failed to inquire about any specific instances of Bobby's untruthfulness, and there was no attempt to point out any alleged prior inconsistent statements Bobby made.

8

¶16.    Earlier in his testimony, Bobby confirmed that he had told his brother about the abuse "once or twice."  But the defense's overly general question about whether Bobby's brother had ever accused Bobby of not telling the truth came several questions later and was not directly connected to the questions regarding Bobby's disclosures about the abuse to his brother.  Even if Bobby's brother had **ever** accused him of not telling the truth, such evidence served no relevant purpose in the jury's determination of a specific fact of consequence in the case.  Moreover, the question failed to aid the jury in determining if Polk had committed a sexual battery against Bobby.  We therefore find the State's objection as to lack of relevancy was appropriate and properly sustained by the circuit court.  Accordingly, we find no abuse of discretion with regard to the circuit court's ruling on this issue.

## II.    Bobby's Character Trait for Untruthfulness

¶17.    In addition to arguing that the circuit court erroneously sustained the State's relevancy objection during his cross-examination of Bobby, Polk asserts that the circuit court also improperly sustained the State's relevancy objection to his questioning of Stampley.  According to Polk, the circuit court's evidentiary rulings prevented him from eliciting admissible testimony about Bobby's character trait for untruthfulness.  Polk contends the circuit court especially erred with regard to his cross-examination of Stampley, where the circuit court limited his questioning of Stampley's opinions about Bobby's behavioral issues to only those based on her personal knowledge of and interactions with Bobby.  As discussed, we review the circuit court's decisions as "[t]he relevancy and admissibility of evidence" for abuse of discretion.  *Davis*, 399 So. 3d at 970 (¶12) (quoting *Ross*, 308 So. 3d

9

at 889 (¶10)).

¶18.    Mississippi Rule of Evidence 404(a)(1) generally prohibits the use of character evidence to prove that a person acted in conformity with that character or trait on a particular occasion.  Specific exceptions exist, however, in criminal cases.  For instance, under Rule 404(a)(2)(B), "a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it . . . ."  MRE 404(a)(2)(B).  When character evidence is admissible under Rule 404, Mississippi Rule of Evidence 405 provides the methods by which such evidence can be introduced.  Rule 405(a) allows "testimony about the person's reputation or . . . testimony in the form of an opinion."  MRE 405(a).  On cross-examination, "the court may allow an inquiry into relevant specific instances of the person's conduct."  *Id.*  Rule 405(b) further provides that "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."  MRE 405(b).

¶19.    Also relevant to our discussion of Polk's arguments on appeal is Mississippi Rule of Evidence 608(a), which states that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."  Rule 608(b) restricts the use of extrinsic evidence "to prove specific instances of a witness's conduct . . . to attack or support the witness's character for truthfulness."  MRE 608(b).  Such specific instances may only be inquired into on cross-examination "if they are probative of the

10

character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness about whose character the witness being cross-examined has testified about." *Id.* Thus, while specific instances of conduct cannot be introduced through extrinsic evidence, they can be explored during cross-examination if relevant to the witness's character for truthfulness. *Id.*

¶20. Polk alleges that Bobby's pertinent trait he sought to prove during his cross-examinations of Bobby and Stampley related to any accusations by Bobby's brother that Bobby had been untruthful. Polk contends that the relevant specific instances of untruthfulness he sought to elicit related to any accusations of untruthfulness by Bobby's brother and any claims by Bobby that he had seen things not based in reality. Because Bobby and Stampley were on cross-examination when Polk's attorney sought to elicit the excluded testimony from them, Rule 608 is of particular interest to our analysis. Rule 608(b) is identical to Federal Rule of Evidence 608(b). The advisory committee notes to Federal Rule of Evidence 608(b) state:

> Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on cross-examination of the principal witness himself or of a witness who testifies concerning his character for truthfulness. Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently[,] safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of [Federal] Rule [of Evidence] 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, and that of [Federal] Rule [of Evidence] 611 bars harassment and undue embarrassment.

¶21. Here, Polk's characterization of the testimony he sought to elicit by asking if Bobby's brother had ever accused Bobby of not telling the truth was not specific conduct by Bobby.

11

Rather, the testimony he sought to elicit was of an extrinsic or collateral nature (i.e., the brother's non-specific opinion about Bobby). The circuit court properly excluded this line of questioning. In a similar manner, Polk's attempt to question Stampley as to documents containing information about Bobby that was not within her personal knowledge was also properly limited.

¶22. Mississippi's Rule 608(b) "does not authorize a fishing license." *Brown v. State*, 402 So. 3d 765, 772 (¶32) (Miss. Ct. App. 2024). Rather, "counsel must have specific instances of past conduct about which he proposes to cross-examine the witness . . . ." *Id.* Polk's question to Bobby about his older brother's opinion was open-ended, offered without any specific instances of conduct, absent of any predicate laid for the question, and amounted to nothing more than a fishing expedition. *See id.* Likewise, Polk's questioning of Stampley attempted to elicit matters that were not within her personal knowledge about Bobby (i.e., Bobby's claims that he saw demons or saw himself hanging from a tree). Not only is such questioning prohibited under Rule 608, but it runs afoul of both Mississippi Rule of Evidence 611, which requires a court to protect a witness from harassment or humiliation, as well as Mississippi Rule of Evidence 405, which requires cross-examination to be about specific instances. Moreover, Polk's trial attorney made no proffer of what he expected to prove as required under Mississippi Rule of Evidence 103(a)(2).

¶23. To support his assertions on appeal, Polk relies heavily on *Vaughn v. State*, 759 So. 2d 1092 (Miss. 1999). Like Polk, the defendant in *Vaughn* was convicted of sexual battery. *Id.* at 1093 (¶1). The accusations against Vaughn arose out of two alleged incidents at

Vaughn's home while the victim, Amber, slept over. *Id.* at 1094 (¶3). The first incident occurred in November 1995, and the second one occurred in May 1996. *Id.* Amber and Vaughn's daughter, Courtney, were friends. *Id.* Vaughn was indicted for sexual battery arising from the November 1995 sleepover and for a fondling charge for alleged events that occurred during the May 1996 sleepover. *Id.* at (¶2). The jury acquitted Vaughn of the fondling charge. *Id.* at 1093 (¶1).

¶24. At trial, Courtney testified that during the November 1995 sleepover, an episode between Amber and Courtney occurred in which Courtney was on a stool attempting to retrieve Thanksgiving decorations. *Id.* at 1095 (¶7). Courtney said that "Amber tickled her such that she was about to fall." *Id.* Courtney "pushed on Amber to keep from falling, and Amber slapped her." *Id.* Vaughn witnessed the events and made Amber apologize. *Id.* Although Amber apologized, she remained angry about the incident. *Id.* According to both Vaughn and Courtney, Amber stated "that if she got into a fight[,] it really didn't matter just so she got the last lick." *Id.* at 1098 (¶16). "Courtney further testified that Amber did not tell her of being touched by [Vaughn] until after the slapping incident." *Id.* at 1095 (¶7). For her part, Amber denied having made any such statement, denied slapping Courtney, and confused the two alleged incidents at Vaughn's home. *Id.* at 1098 (¶16).

¶25. During Vaughn's case-in-chief, the defense called Natalie Mann as a character witness to testify about Amber's untruthful character. *Id.* at 1101 (¶29). The trial court, however, ruled that Mann's testimony was inadmissible. Id. at 1102 (¶29). On appeal, the Mississippi Supreme Court ruled that Vaughn had complied with the plain language of the evidentiary

13

rules and was prejudiced by not being allowed to fully present his defense. *Id.* at 1104 (¶31). The supreme court found that Vaughn offered Mann's testimony to show that Amber had conformed with her pertinent character trait for untruthfulness. *Id.* As the supreme court noted, "Amber's character for truthfulness had already been attacked at the time Mann's testimony was proffered[] because Amber denied having the belief of needing to get in the last lick while Courtney . . . testified that Amber stated to her that getting the last lick was what mattered when one gets into a fight." *Id.* The supreme court therefore concluded that Mann's testimony was admissible and that the trial court had abused its discretion by excluding the testimony. *Id.*

¶26. The facts in *Vaughn* are distinguishable from the present case. In *Vaughn*, Amber's testimony conflicted with other witnesses' testimony, thus calling into question her credibility. *Id.* As the supreme court noted in *Vaughn*, "[t]he testimony [wa]s conflicting" not only "between the parties" but, "in some cases, individual testimony [wa]s not consistent throughout the entire examination." *Id.* at 1094 (¶3). To this end, the defense attorney in *Vaughn* questioned Amber about specific prior statements she had made to other witnesses. *Id.* at 1098 (¶16). Here, however, Polk's attorney failed to ask Bobby specific questions about statements he may have made to his brother—much less to demonstrate that Bobby had made any prior inconsistent statements. Instead, Polk's attorney asked Bobby whether his brother had ever accused him of lying. Although Polk seems to argue that Bobby's testimony about seeing demons and seeing himself hanging from a tree calls his credibility into question, Polk was allowed to pursue his questions about what Bobby saw, and Bobby

14

admitted to seeing them. Also worth noting is the fact that Polk did not call Bobby's brother as a witness to testify about any potentially conflicting statements Bobby might have made to him.

¶27. As for Stampley's cross-examination, the circuit court limited her testimony to those matters within her field of expertise and about which she had personal knowledge. From Polk's argument to the circuit court during the bench hearing, he wished to pursue a line of questioning that highlighted Bobby's claims of what he had seen. There was no proof, however, that Bobby ever made these claims directly to Stampley or that she was qualified to testify as to such matters.

¶28. On appeal, Polk's attorney asserts that the State tendered Stampley as a "child behavioral expert" and that the circuit court therefore failed to follow Mississippi Rule of Evidence 703 by limiting her testimony. Rule 703 provides that

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible.

MRE 703.

¶29. A review of the record clearly reflects that Stampley was neither tendered nor accepted as a "child behavioral expert" as Polk contends. After questioning Stampley regarding her qualifications, the State moved to tender her as an expert in the field of IEPs and "behavioral intervention plans for special[-]needs students." After no voir dire or objection from Polk, the circuit court accepted Stampley as an expert in "IEP and behavioral intervention programs." At the time of trial, Stampley's education consisted of a bachelor's

15

degree in special education, nine hours toward a master's degree in special education, a master's degree in technology, a specialist's degree in educational leadership, and all but her dissertation for a doctor of philosophy degree in educational leadership. Thus, although well qualified to testify regarding Bobby's IEP, we conclude that the circuit court properly performed its role as gatekeeper and appropriately limited Stampley's testimony according to her field of expertise. *See Chisholm v. State*, 365 So. 3d 229, 241 (¶43) (Miss. 2023) (recognizing the trial court's gatekeeping role in determining the admissibility of expert testimony).

¶30. After the circuit court limited Stampley's cross-examination testimony, Polk's attorney made no additional inquiry into her qualifications. Nor did he attempt to proffer the testimony he sought to elicit from Stampley. The questioning that occurred after cross-examination resumed served to support the circuit court's restriction of Stampley's expert testimony. Stampley explained that she only had contact with Bobby during IEP committee meetings and never had one-on-one contact with him. To develop Bobby's IEP, Stampley relied upon records from medical experts who diagnosed him and teachers and faculty who had constant involvement with him. Because Stampley's expert qualifications fell solely within the realms of education and administration rather than child behavior and diagnosis, we find the circuit court properly limited Stampley's testimony on cross-examination.

¶31. Polk argues that "testimony is not hearsay if it is offered only to impeach the testimony of a witness, and not as substantive evidence." *Jordan v. State*, 513 So. 2d 574, 581 (Miss. 1987). The State's objection, however, as it evolved during the arguments made

16

outside the jury's presence, focused on Polk's attempts to collaterally impeach Bobby. In *Jordan*, the objection centered around the State's attempts to impeach a witness with a prior inconsistent statement. *Id.* at 581-82. By contrast, Polk never intimated during his arguments that he intended to impeach Stampley. Rather, Polk attempted to cast doubt on Bobby's testimony by having Stampley acknowledge the existence of what Polk believed to be information in school records, reports, and Bobby's IEP that showed Bobby had an issue with lying. Thus, *Jordan* does not apply to the present circumstances, and we find Polk was once again attempting to prove the character trait of untruthfulness by cross-examining a witness about extrinsic evidence. Accordingly, we find no abuse of discretion in the circuit court's evidentiary rulings related to these issues.

### III. Confrontation-Clause Violations

¶32. Polk also argues in his appellate brief that the circuit court violated his right to confront and cross-examine the witnesses against him by limiting his cross-examinations of Bobby and Stampley. The record contains no specific confrontation-clause objections raised by Polk's attorney during the trial, and Polk failed to allege any confrontation-clause violations in his post-trial motions. However, Polk did make a record with regard to each witness by objecting to the circuit court's limitation of his or her testimony. Further, under the doctrine of plain error, we can examine the record for obvious errors that were not properly raised by the defendant but nevertheless affect a defendant's fundamental, substantive rights. *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008). "[A] violation of the Confrontation Clause" constitutes "a violation of a 'fundamental, substantive

17

right . . . .'" *Id.* We therefore review this issue for plain error.

¶33. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Article 3, Section 26 of the Mississippi Constitution provides an almost identical safeguard. "Impeachment is a vital function of cross-examination, and so 'wide latitude is permitted in cross-examination to show bias or motive and the effect on a witness's credibility.'" *Lewis v. State*, 374 So. 3d 529, 547 (¶66) (Miss. Ct. App. 2023) (quoting *Bennett v. State*, 933 So. 2d 930, 947 (¶58) (Miss. 2006)). "But a defendant's right to cross-examination is not unlimited, and the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Williams v. State*, 281 So. 3d 263, 268 (¶14) (Miss. Ct. App. 2019).

¶34. Under Rule 611(a), a "trial court has the authority to control the mode of interrogating witnesses so as to '(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.'" *Cage v. State*, 149 So. 3d 1038, 1044 (¶14) (Miss. 2014). Based upon our discussion of Polk's other issues raised on appeal, we conclude that the circuit court acted well within its discretion by limiting Polk's cross-examinations of Bobby and Stampley under the Rules of Evidence. We therefore find no plain error arising from the circuit court's rulings with regard to this issue.

## CONCLUSION

¶35.   Upon review, we find no abuse of discretion or plain error in the circuit court's decisions to limit Polk's questioning of both Bobby and Stampley on cross-examination. We therefore affirm Polk's convictions and sentences.

¶36.   **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.  BARNES, C.J., AND WESTBROOKS, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**