# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01335-COA

LORI GRIFFIN A/K/A LORI ANN GRIFFIN
A/K/A LORI A. GRIFFIN A/K/A LORI ANN
SEARCY

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2013 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

WILSON, J., FOR THE COURT:

¶1. Following a jury trial in the Lowndes County Circuit Court, Lori Griffin was convicted of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with four years suspended and four years of post-release supervision. Through appointed appellate counsel, Griffin challenges two of the trial court's evidentiary rulings and argues that there is insufficient evidence to support the conviction or, alternatively, that the jury's verdict was against the weight of the evidence. In a pro se brief, Griffin raises additional evidentiary issues, alleges ineffective assistance of

counsel at trial, and argues that her sentence violates the Eighth Amendment to the United States Constitution. We find no error and affirm Griffin's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2. Lori Griffin rented an apartment in Columbus in July 2009. Dean Loftis, a local realtor, managed the property for Griffin's landlord. In December 2009, the heat went out in Griffin's apartment, and Loftis loaned Griffin a space heater to use until the heat could be repaired. Griffin also tried to use her kitchen oven to heat the apartment, but she forgot that she had left a pizza box in the oven. The pizza box caught fire and damaged the oven. Between 5:30 and 6 p.m. on Friday, December 11, 2009, Griffin told Loftis that the pilot light on her water heater had been out since Tuesday, although she had not reported the problem to Loftis previously. Loftis told Griffin that her maintenance man was out of town but that she would send him to the apartment as soon as he returned after lunch the following day. As promised, the maintenance man went to Griffin's apartment on Saturday, but when he arrived, Griffin told him that a friend had already fixed the issue for her.

¶3. When Loftis went to her office on Sunday, December 13, 2009, there was a message from Griffin on her answering machine. Griffin had left the message on Saturday morning and "seemed to be very angry" that the maintenance man had not arrived yet. Loftis decided that she would go see Griffin on Monday to retrieve her space heater and check on the damage to the stove in the apartment. Loftis also wanted to discuss Griffin's voicemail and to try "[t]o have a better rapport with her."

¶4.     When Loftis arrived at Griffin's apartment on Monday, she knocked on the door, and Griffin came out onto the porch. Loftis told Griffin that she wanted to retrieve her heater and discuss Griffin's voicemail. They talked briefly on the porch, and then Griffin started to walk back into the apartment. Loftis started to follow Griffin inside and had "just put [her] foot on the threshold" when Griffin turned around and said, "Wait, I didn't invite you into my house. You don't come into my house without an invitation." Loftis told Griffin that she also wanted to take a look at the stove, and she said again that she wanted to discuss Griffin's voicemail and why she had left it.

¶5.     When Loftis questioned Griffin about the voicemail, Griffin "went into a fit of rage." Griffin "ran out onto the porch and grabbed [Loftis] by her head." Griffin cursed Loftis and told her that she was "going to regret coming here today." Loftis said that she was going to call the police, and Griffin responded that she would not be able to call the police. While Griffin was cursing and threatening Loftis, she was also pulling chunks of hair out of Loftis's head until Loftis's scalp began to bleed. Then Griffin began hitting Loftis and threw her against the wall. Loftis's head hit the wall, and her eyeglasses fell off. Loftis became dizzy, and Griffin threw her down onto the porch. Then Griffin got on top of Loftis.[1] Loftis testified, "I was face down on the [porch]. She was on top of me. And she was . . . beating me in the head and telling me what she was going to do to me and how I was going to regret

---

[1] Loftis was sixty-two years old, 5'3", and 115 pounds at the time. Griffin was thirty-six years old, 5'7", and 187 pounds.

3

coming there and how many times she had done this before."

¶6.    Loftis saw her shoe lying on the porch to her side, and she managed to pick it up and strike Griffin with it. Loftis testified, "I [thought] I would try to hit her with my shoe and get her off me long enough for me to run to [my] car." After Loftis hit Griffin with her shoe, she noticed that Griffin's two- or three-year-old son had walked out onto the porch and was holding a phone. Loftis got the phone and tried to call 911, but Griffin knocked the phone out of her hand. Griffin was cut and bleeding where Loftis's shoe had hit her, and her little boy saw the blood and began to cry. Loftis said, "Lori, your little son doesn't need to see this." Griffin responded, "Yes, he does. Yes, he does. He needs to know how to do this." Griffin then told her son, "She's a mean lady. She's a mean lady. Hit her. Hit her." The little boy obeyed and hit Loftis, and Griffin "started laughing [a] wicked laugh because [the little boy] was hitting [Loftis]."

¶7.    Griffin then grabbed Loftis by her hair, pulled her back, and made her look at the blood on Griffin's face. Griffin said, "You see now what you've done? . . . I've got to kill you." And then Griffin hit Loftis in the eye with a closed fist, and she said again, "I'm going to have to kill you." According to Loftis, Griffin was on top of her and continued to beat her with her fists, while telling her "that she definitely was going to kill [her]" and that "[s]he had done this before and she knew how to do it and . . . get [away] with it." Loftis begged Griffin to stop; she told her that she had osteoporosis and that her ribs were going to break. Griffin responded, "Good. Good." Griffin said again that she was going to kill Loftis and

4

began bouncing up and down on Loftis's back until Loftis felt one of her ribs break.

¶8.     Loftis saw her car keys lying on the porch, and she was able to reach them and cause her car horn to honk several times. At this point, a friend of Griffin's, "Matt," walked up onto the porch. Griffin said to him, "Hi, Matt. I'm going to kill this woman." Matt did not do anything to stop Griffin, and Griffin "started choking [Loftis] so hard that [Loftis] thought [her] eyes were going to pop out." Loftis begged Matt to make Griffin stop, and Matt finally said, "Lori, don't kill her." But Griffin responded, "I don't have an option. I've got to kill her. She'll go to the cops and I'll go to jail and my kid will go back to the reservation." Matt eventually persuaded Griffin that Loftis would not "go to the cops" because he would "take care of her" if she tried to do so. Griffin eventually agreed to allow Loftis to leave after Loftis promised that she would not go to the police. Griffin told Matt that she was "making a mistake by not killing [Loftis]." Griffin also stomped on Loftis's eyeglasses and threw them into the street. Matt retrieved Loftis's broken eyeglasses and car keys and gave them to her so that she could leave.

¶9.     Loftis drove home, and her husband called the police. A police officer came to her house and then called the paramedics. The paramedics responded, insisted that Loftis needed to go to the hospital, and took her to the hospital in an ambulance. Doctors ordered an MRI to check for head injuries; examined her neck, which was red and bruised; and x-rayed her ribs. Loftis had in fact broken a rib. Loftis also had bruises on her arms and shoulders and bruises, cuts, and blood on her face and scalp, and a black eye.

¶10.    Griffin testified to a very different version of events.  She said that there were many problems with her apartment and that Loftis did not respond promptly to her calls.  She testified that Loftis came to her apartment at 8:30 a.m. on Monday, December 14, 2009, and began "banging on the front door," "screaming at the top her lungs," and demanding to talk to Griffin "about that nasty message."  Griffin testified that she was making her son breakfast at the time and was wearing only a sports bra and blue jeans.  According to Griffin, after she opened the door, Loftis followed her back into her kitchen without her permission.  Griffin claimed that when she asked Loftis to leave, Loftis said, "I'll come in whenever I like . . . . This is how we do it in the south."  Griffin testified that she then tried to call 911, but Loftis grabbed her hand and knocked the phone away from her.  Griffin testified that when she bent down to pick up the phone, Loftis "took off her shoe and started hitting [Griffin] in the head with it."

¶11.    Griffin testified that her "fight and flight responses just kicked in" and she was "in survival mode."  She "sprang up and got [Loftis] by her shoulders," she pushed Loftis back to the door, and both women tripped and fell out onto the front porch.  Griffin testified that she sat on top of Loftis on the front porch, but she claimed that Loftis tried to hit her again with the shoe and tried to stab her with car keys.  Griffin testified that her son was crying, and she tried to tell him to go back inside the apartment.  Griffin testified that Loftis next tried to "grab [her] son"—although Griffin acknowledged that she was still sitting on top of Loftis at this point.  Griffin claimed that Loftis actually managed to grab her son by his shirt,

6

and Griffin responded by hitting Loftis in the face and head.

¶12. Griffin testified that her neighbor and acquaintance, Matthew Evans, heard her screaming for help. She testified that Evans took her son inside the apartment and then came back outside. Griffin testified that she let Loftis get up, and Loftis said she "just want[ed] to go and forget [the] day ever happened." According to Griffin, Loftis continued to demand her space heater, so Griffin brought the heater outside and left it next to Loftis's car. Loftis then departed. Griffin called 911, and the police responded. She told the police that she did not want to press charges unless Loftis did. Griffin then went to the hospital. She had a single cut on her head, which was about half an inch in length. A doctor closed the cut with two medical staples. The doctor noticed a bruise on one of Griffin's fingers but no other injuries.

¶13. Griffin was indicted in May 2010 and released on bond. She subsequently absconded to North Carolina. In December 2011, a bench warrant was issued for her arrest after she failed to appear for trial. She remained on the lam until she was apprehended in Alabama and returned to Mississippi to stand trial. Her case proceeded to trial in March 2013. Her first trial ended in a hung jury and a mistrial. At her second trial, the jury found her guilty of aggravated assault. The circuit court sentenced her to twenty years in MDOC custody, with four years suspended and four years of post-release supervision, and ordered her to pay a $1,000 fine, restitution, and court costs.

¶14. After Griffin was sentenced, her trial counsel filed a motion for a "directed verdict"

or a new trial, which the circuit court denied. Griffin then informed her trial counsel that she did not want to appeal. On March 28, 2013, the circuit court held a hearing and questioned Griffin to ensure that she understood that she had a right to appeal and a right to appointed counsel on appeal. Griffin confirmed that she understood this, that she had consulted with trial counsel, and that she did not want to appeal. The circuit court found that Griffin had knowingly, voluntarily, and intelligently waived her right to appeal.

¶15.    Almost six months later, on September 17, 2013, Griffin filed a pro se, fill-in-the-blank "Motion for Appointment of Appellate Counsel and for Other Relief" in which she requested permission to file an out-of-time appeal pursuant to Rule 4 of the Mississippi Rules of Appellate Procedure. The circuit court denied her request. The court noted that it had "no issues with, or objections to, [Griffin] seeking an out-of-time appeal," but the court no longer had jurisdiction to grant her request under Rule 4. *See* M.R.A.P. 4(g). The court instructed Griffin that "the proper remedy" would be for her "to seek leave to file an out-of-time appeal from the Supreme Court of Mississippi under Rule 2(c) of the Mississippi Rules of Appellate Procedure."

¶16.    Griffin followed the circuit court's instructions and filed a motion in the Supreme Court requesting leave under Rule 2(c) to file an out-of-time appeal. A panel of the Supreme Court found that Griffin's "motion should be dismissed without prejudice to [her] right to seek an out-of-time appeal by filing a petition for post-conviction collateral relief in the trial court." *Griffin v. State*, No. 2014-M-00688 (Miss. June 20, 2014) (citing Miss. Code Ann.

8

§ 99-39-5(1)(i) (Rev. 2015)).

¶17. Griffin then returned to the circuit court and filed a pro se, fill-in-the-blank "Post-Conviction Petition for Out of Time Appeal, Appointment of Appellate Counsel, and for Other Relief." Griffin's petition was filed in a separate case with a civil cause number. Griffin's certificate of service shows that she served the district attorney. On September 4, 2014, without requesting a response from the State, the circuit court granted Griffin's motion for an out-of-time appeal and directed her to file a notice of appeal within twenty days. The court directed the circuit clerk to send a copy of its order "to all parties," and the circuit clerk's records show that a copy was sent to the district attorney. Griffin then filed a notice of appeal in her criminal case on September 16, 2014.

¶18. The Office of State Public Defender, Indigent Appeals Division, was appointed to represent Griffin on appeal. Griffin's appointed counsel argues that (1) the State improperly introduced evidence of Loftis's reputation for having a character for truthfulness, (2) the trial court erred by allowing the State to cross-examine Griffin about having put her child up for adoption and by not allowing Griffin to explain her reason for doing so, (3) the evidence was insufficient to convict Griffin of aggravated assault, and (4) the jury's verdict was against the overwhelming weight of the evidence. *See* Parts II-IV, *infra*. In a pro se supplemental brief, Griffin argues that (1) a prior written statement by Loftis should have been admitted into evidence, (2) the trial court erred by admitting "distorted" black-and-white photos into evidence, (3) her trial counsel should have demanded a speedy trial, and (4) her sentence is

9

cruel and unusual punishment and violates the Eighth Amendment to the United States Constitution. *See* Parts V-VIII, *infra*. We address these issues in turn below, find no reversible error, and affirm Griffin's conviction and sentence.

## ANALYSIS

### I.  This Court has jurisdiction to consider Griffin's appeal.

¶19.   After the parties filed their briefs on appeal, this Court ordered supplemental briefing on the questions whether the circuit court properly granted Griffin's motion for an out-of-time appeal and whether this Court has jurisdiction to consider the appeal. The State argues that the circuit court erred by granting Griffin's motion—and that this Court lacks appellate jurisdiction—because Griffin did not show that she failed to perfect a timely appeal "through no fault of her own."

¶20.   The State's argument would have been a valid basis for opposing Griffin's motion for post-conviction relief. The Uniform Post-Conviction Collateral Relief Act permits a prisoner to file "a motion for an out-of-time appeal if the person claims . . . [t]hat he is entitled to an out-of-time appeal." Miss. Code Ann. § 99-39-5(1)(i). However, "[t]hat remedy is able to protect inmates who *through no fault of their own* have not had an appeal of their underlying conviction." *DeLoach v. State*, 890 So. 2d 934, 936 (¶7) (Miss. Ct. App. 2004) (emphasis added; quotation marks omitted). "[A] defendant seeking an out-of-time appeal must, by a preponderance of the evidence, demonstrate that he asked his attorney to appeal within the time allowed but that the attorney failed to appeal, *and such failure was not the defendant's*

*fault*." *Arnold v. State*, 93 So. 3d 908, 912 (¶10) (Miss. Ct. App. 2012) (emphasis added).

Thus, a prisoner generally is not entitled to an out-of-time appeal when, as in this case, she

knowingly and voluntarily waives the right to appeal. *See Davis v. State*, 36 So. 3d 456, 457-

58, 460-61 (¶¶3, 12-15) (Miss. Ct. App. 2010).

¶21.    However, the circuit court granted Griffin an out-of-time appeal in a final judgment

entered in a separate civil, post-conviction action. *See* Miss. Code Ann. § 99-39-23(6) (Rev.

2015) ("[An] order [granting or denying post-conviction relief] is a final judgment and shall

be conclusive until reversed."). The State could have moved for reconsideration or appealed

from the judgment in the post-conviction case.[2]  *See* Miss. Code Ann. § 99-39-25(1) (Rev.

2015) ("A final judgment entered under [the Uniform Post-Conviction Collateral Relief Act]

may be reviewed by the supreme court of Mississippi on appeal brought either by the

prisoner *or the state* on such terms and conditions as are provided for in criminal cases."

(emphasis added)). However, the State did not appeal, so the judgment in the post-conviction

case became final.  Moreover, the State does not argue that the judgment in the post-

---

[2] The circuit court probably should have requested a response from the State prior to granting Griffin's motion for post-conviction relief. *See* Miss. Code Ann. § 99-39-11(3) (Rev. 2015) ("If [a] motion [for post-conviction relief] is not dismissed [summarily], the judge shall order the state to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate . . . ."). However, as noted above, Griffin's certificate of service shows that she served her motion on the district attorney, and the circuit court sent the district attorney a copy of the order granting Griffin's motion. The State never asked the circuit court to vacate or otherwise reconsider its ruling.

conviction case is void.[3]  Therefore, there is no basis for this Court to look behind that judgment.  The final judgment in the post-conviction case gives this Court jurisdiction to consider Griffin's out-of-time appeal from her criminal conviction.

## II. Griffin waived any objection to testimony about Loftis's reputation for having a character for truthfulness.

¶22.   Griffin argues that the circuit court erred by permitting six witnesses to testify in rebuttal that Loftis had a reputation for having a truthful character.  Griffin argues that it was error to admit this testimony because Loftis's character for truthfulness was never attacked.  The State responds that this testimony was properly admitted in response to Griffin's accusation that the police "coached" Loftis by telling her that Griffin previously had been charged with aggravated assault.  Griffin further accused Loftis of tailoring and fabricating parts of her statement to police based on their "coaching."  Griffin leveled these accusations in a pretrial letter to one of the circuit judges, and the State cross-examined Griffin about the letter and introduced it into evidence at trial.

¶23.   Mississippi Rule of Evidence 608(a) provides that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." M.R.E. 608(a).  However, "evidence of truthful character is admissible only after

---

[3] The State does argue that the circuit court's ruling was erroneous because Griffin failed to prove her entitlement to an out-of-time appeal.  However, "[a] judgment cannot be set aside simply because it is erroneous." *Bryant Inc. v. Walters*, 493 So. 2d 933, 937 (Miss. 1986).

the witness's character for truthfulness has been attacked." *Id.*; *see Brent v. State*, 929 So. 2d 952, 957 (¶¶11-13) (Miss. Ct. App. 2005).

¶24. "A trial court's admission of testimony is reviewed for an abuse of discretion." *Chaupette v. State*, 136 So. 3d 1041, 1045 (¶7) (Miss. 2014). "We give great deference to the discretion of the trial judge, and unless we conclude that the [decision] was arbitrary and clearly erroneous, amounting to an abuse of discretion, the trial judge's decision will stand." *Id.* (quotation marks, brackets omitted). "Moreover, we may reverse a case only if the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party." *Id.* (comma and quotation marks omitted).

¶25. Having reviewed the testimony of the six witnesses at issue, we find that Griffin never objected to the introduction of evidence that Loftis had a reputation for having a character for truthfulness. Griffin did not object when the prosecution asked the first of the six witnesses, Tina Dodd, about Loftis's reputation for having a character for truthfulness.[4] Griffin did object when the next witness, Valeria Anthony, began to testify about her specific interactions with Loftis. However, when the prosecutor rephrased the question, and Anthony confined her answer to Loftis's reputation for having a character for truthfulness, Griffin made no objection. Next, Griffin did not object to Rhonda Sanders's testimony about Loftis's reputation for having a character for truthfulness. Griffin did object when the fourth of these witnesses, Joe Hollowell, testified simply that Loftis is "very truthful"; however,

---

[4] Griffin objected only to a subsequent question concerning Loftis's "reputation" and "character for peacefulness versus violence."

13

following an off-the-record bench conference, the prosecutor rephrased her question, and Hollowell testified without objection that Griffin had a good reputation for having a character for truthfulness. The final two witnesses, Geri Holliman and Edward Wallington, offered similar testimony without any objection from Griffin. Thus, during the relevant testimony of these six witnesses, Griffin made only two objections to the form of the prosecutor's question or the witness's answer. She never objected that testimony about Loftis's reputation for having a truthful character was altogether improper and inadmissible.

¶26. Our Supreme Court has held that "an objection on one or more specific grounds constitutes a waiver of all other grounds." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008) (quotation marks omitted). "[A]n objection cannot be enlarged in the reviewing court to embrace [issues] not complained of at trial." *Id.* "This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider." *Id.* In this case, Griffin did not object at all when the State first offered reputation-for-character-for-truthfulness testimony through Dodd, and her only later objections were to the form of a particular question or answer. Griffin *never* objected at trial "on the ground [she] raises on appeal"; therefore, she "waived any argument" that reputation-for-character-for-truthfulness testimony was inadmissible under Rule 608(a). *Smith*, 986 So. 2d at 295 (¶14).

> **III.** **The trial court did not abuse its discretion by allowing full cross-examination and impeachment of Griffin or by precluding Griffin from disclosing her possible sentence to the jury.**

¶27. On direct examination, in the course of explaining why she had jumped bond, Griffin

14

specifically testified that in 2012 she had moved to Cullman, Alabama, with both of her "children," including her younger son. Griffin told the jury that she moved to Cullman in part because "Bloomberg Business Week" had listed that city "as the number one place to raise children." In point of fact, Griffin did not move to Cullman with both of her children or her younger son. She put the younger son up for adoption in 2011, *before she moved to Cullman*. On cross-examination, the State attempted to impeach Griffin by questioning her about the fact of her younger son's adoption. Griffin objected on grounds of relevance and prejudice, but the trial judge overruled the objection. The trial judge found that Griffin had "opened the door to this line of questioning" through her testimony on direct. The trial judge also found, under Mississippi Rule of Evidence 403, that Griffin's "credibility" was of "paramount" importance to the case and that "any prejudicial effect [was] outweighed substantially by the probative value" of the evidence. The judge did caution the State "to be careful about going too far afield."

¶28.   On appeal, Griffin argues that the trial judge erred by allowing the State to cross-examine her about the adoption. She contends that this line of questioning should have been prohibited under Rule 403. We disagree.

¶29.   "Mississippi allows wide-open cross-examination of any matters affecting the credibility of the witness." *Brown v. State*, 690 So. 2d 276, 292 (Miss. 1996) (quoting *Tillis v. State*, 661 So. 2d 1139, 1149 (Miss. 1995)); *accord Keller v. State*, 138 So. 3d 817, 840 (¶34) (Miss. 2014); M.R.E. 611(b). "[A] trial court's rulings on the extent of cross-

15

examination will be reversed only when an abuse of discretion is shown." *Byrom v. State*, 863 So. 2d 836, 862 (¶81) (Miss. 2003). Moreover, "'Rule 403's scope is narrow,' as 'it is an extraordinary measure that should be used very sparingly.'" *Owens v. Kelly*, 191 So. 3d 738, 745 (¶23) (Miss. Ct. App. 2015) (quoting *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)). Rule 403 permits the exclusion of relevant evidence based on "unfair prejudice" *only if* the evidence's "probative value is *substantially outweighed* by a danger of" unfair prejudice. M.R.E. 403 (emphasis added); *see Owens*, 191 So. 3d at 745 (¶23).

¶30.    In this case, the trial judge did not abuse his discretion. The State's cross-examination directly addressed a "matter[] affecting [Griffin's] credibility," *Brown*, 690 So. 2d at 292, as it revealed a clear lie in her testimony on direct. Griffin interjected the issue into the case through her self-serving—and at least partially false—testimony about her reasons for moving to Alabama. Griffin did not have to testify about moving to Alabama, but once she did, she opened the door to cross-examination about her truthfulness on that subject. Nor can we say that the trial judge abused his discretion in applying Rule 403. As the trial judge found, Griffin's "credibility" was a "paramount" issue at trial, and the probative value of this impeachment was not substantially outweighed by any danger of unfair prejudice. Griffin's argument on this issue is without merit.

¶31.    Griffin also argues that the trial judge abused his discretion by precluding her from testifying that she put her son up for adoption because she was facing a lengthy prison sentence if convicted. After the trial judge ruled that the State could cross-examine Griffin

regarding the adoption, Griffin testified as follows:

> Q. Ms. Griffin, isn't it true that in September of 2011 you gave up your younger son for adoption?
>
> A. I did due to the fact that I'm looking at 20 years if I'm convicted here, yes, ma'am. I did not want that child . . . becoming attached to me.

The judge interrupted Griffin and instructed the jury to disregard this testimony because the jury would not decide Griffin's sentence and should not consider her sentence in rendering a verdict. The judge then excused the jury from the courtroom and admonished Griffin, outside the presence of the jury, not to testify about her potential sentence. On appeal, Griffin argues that this limitation on her testimony was error.

¶32. We disagree. As an initial matter, Griffin failed to preserve the issue for appellate review. After the jury was excused, Griffin's attorney did not argue that she should be allowed to testify about her potential sentence. In fact, when the trial judge correctly stated that the jury was "not even to know potential sentences," Griffin's attorney stated, "I understand, Judge. I totally agree with you."

¶33. Moreover, procedural bar notwithstanding, the trial judge's ruling was correct. Griffin's potential sentence was not a proper consideration for the jury. *See Marks v. State*, 532 So. 2d 976, 983-84 (Miss. 1988) ("[T]he jury should have no concern with the quantum of punishment to be imposed. . . . The question of punishment is categorically unrelated to [what] the verdict should be . . . ."); *see also Roach v. State*, 116 So. 3d 126, 136 (¶32) (Miss. 2013) (Kitchens, J., dissenting) ("The severity or leniency of a defendant's possible sentence

17

is purposely withheld from juries exactly because of its considerable potential to influence their verdicts."). The trial judge did not abuse his discretion in permitting full cross-examination on issues relevant to Griffin's credibility; nor did the trial judge abuse his discretion by cutting off Griffin's testimony about her potential sentence.

### IV. Griffin's challenges to the sufficiency and weight of the evidence are procedurally barred and without merit.

¶34. Griffin next argues that the State presented insufficient evidence to convict her of aggravated assault or, in the alternative, that she is entitled to a new trial because the jury's verdict is against the overwhelming weight of the evidence. As to both of these issues, Griffin advances only a very specific and narrow claim that the State failed to prove that Loftis suffered "serious bodily injury." Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2014).

¶35. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶36. We review the trial judge's decision denying a new trial for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). "We do not reweigh evidence," "assess the witnesses' credibility," or "resolve conflicts between evidence." *Id.* at 289 (¶1).

18

"Those decisions belong solely to the jury." *Id.* On appeal, we "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*

¶37. Griffin's indictment charged that she "did unlawfully, willfully, and feloniously, purposely and knowingly cause serious bodily injury to Dean Loftis, by choking her and hitting her with her fist, breaking a rib, without authority of law and not in necessary self defense." Consistent with the indictment, the court instructed the jury that the State was required to prove beyond a reasonable doubt that Griffin "cause[d] serious bodily injury to Dean Loftis by hitting her and breaking her rib."

¶38. On appeal, Griffin argues that the State failed to prove that Loftis suffered any "serious bodily injury," as that term is defined by Mississippi law. For purposes of the aggravated assault statute, "serious bodily injury" means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Rickman v. State*, 150 So. 3d 983, 986 (¶12) (Miss. Ct. App. 2014) (emphasis omitted) (quoting *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992)).

¶39. We begin by noting that Griffin failed to raise this issue in the trial court. After the State rested its case-in-chief, Griffin moved for a directed verdict, but she simply asserted, without elaboration, that "the State hasn't met its burden by beyond a reasonable doubt." The

19

trial judge denied Griffin's motion, and Griffin did not renew the motion at the close of the evidence. Nor did Griffin request a jury instruction defining "serious bodily injury" or a lesser-included-offense instruction on simple assault.[5] In closing argument, the assistant district attorney argued that this issue—whether Loftis suffered a serious bodily injury—was "not in dispute," and Griffin's counsel did not address the issue at all. Finally, Griffin's post-trial motion for a "directed verdict" or a new trial included only a general assertion that "[t]he verdict was against the overwhelming weight of the evidence."

¶40.    Even if we assume that Griffin's post-trial motion for a "directed verdict" or a new trial was sufficient to preserve *some* challenge to the weight or sufficiency of the evidence,[6] Griffin never raised the specific issue that she now raises on appeal. Our Supreme Court has held that "[a] motion for a directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature." *Sheffield v. State*, 749 So. 2d 123, 126 (¶10) (Miss. 1999) (quoting *Banks v. State*, 394 So. 2d 875, 877 (Miss. 1981)). Post-trial motions for a judgment notwithstanding the verdict (JNOV) or a new trial require the same specificity. *Id.*; *accord Thomas v. State*, 195 So. 3d 843, 850 n.4 (Miss. Ct. App. 2016); *Carey v. State*, 80 So. 3d 131, 135 (¶12) (Miss. Ct. App.

---

[5] *See Odom v. State*, 767 So. 2d 242, 246 (¶13) (Miss. Ct. App. 2000) ("Simple assault is clearly contained within aggravated assault, the main difference pertaining to whether serious bodily injury resulted.").

[6] *See Odem v. State*, 881 So. 2d 940, 950 (¶¶35-36) (Miss. Ct. App. 2004).

2012); *Riley v. State*, 11 So. 3d 751, 753-54 (¶10) (Miss. Ct. App. 2008). In *Sheffield*, after he was convicted of burglary of a dwelling, the defendant argued on appeal that the State failed to prove that the building he burgled was a "dwelling." *Sheffield*, 749 So. 2d at 126 (¶10). Our Supreme Court held that he was "procedurally barred from raising this issue for the first time on appeal" because his motions for a directed verdict and JNOV or a new trial "failed to address the 'dwelling' element." *Id.* Therefore, the Court refused to consider the argument. *Id.*

¶41.    The same is true in this case. Griffin's motion for a directed verdict and her post-trial motion both completely "failed to address the ['serious bodily injury'] element." *Id.* Therefore, the issue is "procedurally barred" on appeal. *Id.*

¶42.    But even if Griffin had not waived this issue, we would still affirm her conviction. In *Truelove v. State*, 78 So. 3d 363 (Miss. Ct. App. 2011), the defendant was convicted of two counts of aggravated domestic violence, which is aggravated assault committed against specific victims, including spouses, girlfriends, and others. *See id.* at 363, 368 (¶¶1, 24); Miss. Code Ann. § 97-3-7(4) (Rev. 2014). Truelove beat his live-in girlfriend on two different occasions. In the first assault, "[s]he suffered a broken nose and concussion, and she had numerous bruises and scratches all over her body." *Truelove*, 78 So. 3d at 364 (¶2). In the second assault, she "suffered a broken rib, a loose tooth, and bruises and cuts all over her body." *Id.* at (¶3). On appeal, Truelove argued that the State failed to prove that the victim suffered a "serious bodily injury" on either occasion. *Id.* at 367 (¶22). This Court

21

rejected his argument. *Id.* at 368 (¶24). As to the first assault, we stated that "a broken nose has been found to constitute a serious bodily injury," and we held that "[p]roof of the broken nose *alone* was enough to support a claim of serious bodily injury." *Id.* at (¶25) (emphasis added). As to the second assault, we held that the State proved serious bodily injury based on the victim's testimony and other evidence of injuries and significant bruising around her ribs, which caused pain and difficulty breathing. *Id.* at 368-69 (¶¶26-27). We held that this was sufficient proof of serious bodily injury even without specific "medical proof" that the victim "suffered a broken rib from the second altercation." *Id.*

¶43. There is no material distinction between *Truelove* and this case. As to the first assault in *Truelove*, we said that "the broken nose alone was enough to support a claim of serious bodily injury." *Id.* at 368 (¶25). We see no basis, for purposes of the aggravated assault statute, for distinguishing a broken nose from a broken rib. Likewise, there is no basis for distinguishing the broken rib in the second assault in *Truelove* from the broken rib suffered by Loftis in this case. Moreover, the descriptions of the assaults and resultant injuries in *Truelove* are comparable to the evidence and injuries involved in this case. *See generally id.* at 364-66, 368-69 (¶¶6-15, 25-27).

¶44. "[L]ike cases ought to be decided alike." *Thompson v. State*, 230 So. 3d 1044, 1055 (¶36) (Miss. Ct. App. 2017) (quoting *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 634 (Miss. 1991)), *cert. denied*, 229 So. 3d 121 (Miss. 2017). Therefore, as in *Sheffield*, *supra*, we hold that Griffin's argument is "procedurally barred" because she completely "failed to

22

address the ['serious bodily injury'] element" in her motions and arguments in the trial court. *Sheffield*, 749 So. 2d at 126 (¶10). In addition, as in *Truelove*, we hold that the State presented sufficient evidence of serious bodily injury to sustain the conviction.[7]

> **V.** **The trial judge did not err by not admitting Loftis's written statement into evidence; nor did trial counsel provide ineffective assistance by not attempting to introduce the statement.**

¶45. An investigator with the Columbus Police Department interviewed Loftis the day after the assault and drafted a statement based on the interview, which Loftis reviewed and signed. Griffin's attorney briefly used the statement to cross-examine Loftis, asking her whether she recalled telling the investigator that "blood was pouring from Ms. Griffin's head." However, Griffin's lawyer did not attempt to introduce the statement into evidence. In her pro se supplemental appellate brief, Griffin argues that the trial judge should have admitted the statement into evidence sua sponte. She also argues that her trial counsel's failure to introduce the statement constitutes ineffective assistance of counsel.

¶46. Griffin's arguments are without merit. To begin with, there is nothing to indicate that the statement would have been helpful to Griffin's case. *See Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006) (holding that an ineffective assistance claim fails if there is no showing that counsel's alleged errors prejudiced the defendant). In addition, trial counsel's

---

[7] Griffin makes a nominally separate argument regarding the "weight of the evidence"; however, she simply states that this argument is "identical to . . . her sufficiency challenge." At trial, there was no material dispute or conflicting evidence regarding the nature of Loftis's injuries. Therefore, Griffin's weight-of-the-evidence argument fails for essentially the same reasons as her challenge to the sufficiency of the evidence.

decisions as to whether to seek to introduce certain evidence generally and presumptively fall within the scope of reasonable trial strategy—and, therefore, are not a basis for an ineffective assistance claim. *See, e.g.*, *Havard v. State*, 86 So. 3d 896, 904 (¶27) (Miss. 2012); *Chamberlin v. State*, 55 So. 3d 1046, 1053 (¶21) (Miss. 2010). In this case, defense counsel's decision not to attempt to introduce the victim's written statement—which incriminated Griffin—surely was reasonable trial strategy. And to the extent that Griffin alleges error by the trial judge, there simply was no reason for the trial judge to admit the statement into evidence sua sponte.

## VI. Griffin cannot complain about evidence that she introduced at trial.

¶47. Griffin's pro se supplemental brief next advances an argument about some black-and-white photographs of her, Loftis, and the crime scene that were admitted into evidence at trial. The nature of the argument is not entirely clear. On appeal, Griffin argues that the photos were misleading. However, Griffin, not the State, offered these photos into evidence. The State offered only color photos. Griffin's claim is procedurally barred and without merit because she did not raise this issue in the trial court. In fact, she introduced the evidence about which she now complains. *See, e.g.*, *Smith*, 986 So. 2d at 295 (¶13) ("This Court cannot find that a trial judge committed reversible error on a matter not brought before him or her to consider."); *Graves v. State*, 216 So. 3d 1152, 1159 (¶15) (Miss. 2016) ("A defendant cannot complain on appeal of alleged errors [that she] invited or induced." (quoting *Galloway v. State*, 122 So. 3d 614, 645 (¶87) (Miss. 2013)).

24

### VII. Griffin's speedy trial/ineffective assistance claim is dismissed without prejudice.

¶48. Griffin's pro se brief next argues that her trial counsel provided ineffective assistance by not demanding a speedy trial. Griffin alleges that she lost touch with a key witness, Matthew Evans, because of the passage of time.

¶49. Ordinarily, claims of ineffective assistance should be raised in a motion for post-conviction relief, not on direct appeal. As this Court has summarized:

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Johnson v. State*, 191 So. 3d 732, 735-36 (¶13) (Miss. Ct. App. 2015) (citations, quotation marks, and alterations omitted), *cert. denied*, 202 So. 3d 209 (Miss. 2016), *cert. denied*, 137 S. Ct. 670 (2017).

¶50. Part of the delay in bringing this case to trial clearly cannot be blamed on Griffin's lawyer. As discussed above, Griffin jumped bail, failed to appear for trial in December 2011, and absconded to North Carolina and later Alabama. She was returned to Mississippi in November 2012 and tried in March 2013. Any delay caused by Griffin's flight and failure to appear is her fault alone and cannot give rise to a speedy trial or ineffective assistance

claim. *See Williams v. State*, 158 So. 3d 309, 312 (¶10) (Miss. 2015).

¶51. However, the record is unclear as to why the trial was delayed prior to Griffin's flight. Griffin was indicted in May 2010, and the court initially set the case for trial in August 2010. The case was then continued five times by agreement, with the last agreed order setting trial for December 2011. The agreed orders are not in the record on appeal, nor is there any specific explanation for the continuances. In addition, there is no evidence to support Griffin's claim that Evans might have offered helpful testimony had the case proceeded to trial sooner. On this record, the usual reasons for not addressing ineffective assistance claims on direct appeal apply. Accordingly, we dismiss this claim without prejudice to Griffin's right to assert the claim in a properly filed motion for post-conviction relief. *Johnson*, 191 So. 3d at 736 (¶13).[8]

### VIII. Griffin's sentence does not violate the Eighth Amendment to the United States Constitution.

¶52. Finally, Griffin argues that her sentence—twenty years in MDOC custody, with four years suspended and four years of post-release supervision—violates the Eighth Amendment to the United States Constitution. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Griffin discusses several reported aggravated assault cases in which lesser sentences were imposed, and she argues that those cases involved "more heinous" crimes than hers. Griffin

---

[8] Griffin would have to obtain permission from the Mississippi Supreme Court to file such a motion. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

also attempts to minimize her culpability, claiming that she had "no intention to do bodily harm" and that Loftis "was the initial aggressor." Obviously, these claims are in direct conflict with Loftis's testimony about the assault, which the jury apparently found credible. Finally, Griffin alleges that the trial judge has a "personal vendetta" against her, citing another aggravated assault case in which the judge imposed a lesser sentence; however, the record contains nothing to support Griffin's allegations about the other case with the lesser sentence.

¶53. Both the United States Supreme Court and the Mississippi Supreme Court have emphasized that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be *exceedingly rare*." *Barnwell v. State*, 567 So. 2d 215, 220 (Miss. 1990) (emphasis added; emphasis and brackets omitted) (quoting *Solem v. Helm*, 463 U.S. 277, 289-90 (1983)). In *Solem*, the Court discussed three factors that may be relevant to an Eighth Amendment challenge to a prison sentence. *See Solem*, 463 U.S. at 290-92. However, it is necessary to consider those "factors . . . *only* when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Thomas v. State*, 48 So. 3d 460, 479 (¶58) (Miss. 2010) (emphasis added) (quoting *Johnson v. State*, 950 So. 2d 178, 183 (Miss. 2007)); *see Harmelin v. Michigan*, 501 U.S. 957, 1004-05 (1991) (Kennedy, J., concurring in part and concurring in the judgment). "Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate . . . ." *Thomas*, 48 So. 3d at 479

(¶59). And when a sentence is constitutional, "[t]he imposition of a sentence is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute." *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991).

¶54. We cannot say that Griffin's sentence of twenty years in MDOC custody with four years suspended and four years of post-release supervision is "grossly disproportionate." *See, e.g.*, *Ford v. State*, 975 So. 2d 859, 869-70 (¶¶39-42) (Miss. 2008) (holding that a seventeen-year sentence for aggravated assault does not support an inference of gross disproportionality); *Darnell v. State*, 202 So. 3d 281, 287 (¶¶20-21) (Miss. Ct. App. 2016) (same as to a sentence of twenty years with five years suspended and five years of post-release supervision); *see also Barnwell*, 567 So. 2d 219-22 (upholding a fifteen-year sentence for uttering a forgery as a habitual offender although the defendant's only prior convictions were for non-violent felonies). On appeal, Griffin emphasizes that she did not use a deadly weapon or inflict injuries as severe as in some other aggravated assault cases. However, the evidence at trial showed an especially vicious, brutal, and prolonged assault. In addition, Griffin was considerably larger and younger than Loftis. According to Loftis, Griffin repeatedly stated that she was going to kill her, and the evidence suggested that Griffin did not murder Loftis only because Loftis was able to activate her car horn, drawing a neighbor's attention. According to Loftis, Griffin could have ended the assault at any time, but she continued to beat Loftis mercilessly. Griffin's assertion that Loftis was the "initial aggressor" is also unavailing, as there was substantial evidence to the contrary.

28

¶55. Griffin's sentence was not grossly disproportionate; therefore, it does not violate the Eighth Amendment to the United States Constitution. The sentence imposed was within the limits set by the statute and within the discretion of the sentencing judge.

## CONCLUSION

¶56. There is sufficient evidence to support the conviction, the jury's verdict is not against the overwhelming weight of the evidence, and Griffin has not identified any error in the admission or exclusion of evidence. In addition, Griffin's sentence is constitutional and within the limits set by statute. The ineffective assistance claim discussed in Part VII, *supra*, is dismissed without prejudice. Griffin may raise that issue in a properly filed motion for post-conviction relief.

¶57. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., AND FAIR, J., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS, J. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, GREENLEE AND WESTBROOKS, JJ.**

**TINDELL, J., CONCURRING IN PART AND IN RESULT:**

¶58. I agree with the majority's affirmation of Griffin's conviction and sentence and its well-reasoned determination of the jurisdictional, constitutional, and evidentiary issues. I also agree with the majority's opinion that because Griffin failed to address the serious bodily injury element in her motion for a directed verdict and her post-trial motions, the issue is now procedurally barred. However, unlike the majority, it is my opinion that a reasonable juror,

given the appropriate definition of the term "serious bodily injury" as an element of aggravated assault, could rationally say the State did not prove "serious bodily injury" to Loftis.

¶59. "Serious bodily injury" as defined by Mississippi law means "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Rickman v. State*, 150 So. 3d 983, 986 (¶12) (Miss. Ct. App. 2014) (emphasis omitted) (quoting *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992)). There is no medical evidence to support the idea that a broken rib, whether treated or left untreated, causes a substantial risk of death. There is no medical evidence that a broken rib causes a loss or impairment of any bodily member, organ, or function. There is no evidence, medical or otherwise, regarding any serious or impairing effect on Loftis from her broken rib.

¶60. There certainly exist circumstances in which a broken bone alone would not automatically warrant enhancing a charge of simple assault to the more serious felonious charge of aggravated assault. When the State attempts to pursue an aggravated-assault conviction in circumstances such as presented in this case, it is my opinion that such enhancement requires the jury be properly instructed and that the State should offer at least some medical proof that the injuries are consistent with the legal definition of "serious bodily injury." I, otherwise, concur in part and in the result with the majority's opinion.

**WESTBROOKS, J., JOINS THIS OPINION IN PART.**

30

**IRVING, P.J., DISSENTING:**

¶61. I disagree with the majority's finding that the State's contention—that Griffin's appeal is untimely—is without merit because the State failed to present that issue to the circuit court in opposition to Griffin's post-conviction-relief (PCR) petition for an out-of-time appeal. I also disagree with the majority's implicit finding that this Court lacks the authority to dismiss this appeal for lack of jurisdiction, as this Court always has jurisdiction to determine our jurisdiction and to dismiss an appeal if we find that we lack jurisdiction. Therefore, I dissent. I would dismiss this appeal for lack of jurisdiction. I explain, but first I will state some relevant facts.

¶62. On March 14, 2013, a Lowndes County Circuit Court jury convicted Lori Griffin of aggravated assault, and on March 15, 2013, the circuit court sentenced her to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with four years suspended and four years of post-release supervision. Griffin filed a motion for a directed verdict or, alternatively, a new trial, which the circuit court denied on March 27, 2013. The next day, in open court, the circuit judge questioned Griffin to make sure she understood her appeal rights:

BY THE COURT:  I ruled yesterday on the motion for [a] new trial or judgment notwithstanding the verdict. . . . Now, I was going [sic] to talk with Ms. Smith[9] and Ms. Griffin.

Q.  Ms. Griffin, . . . I think I told you the other day in

---

[9] Ms. Smith was Griffin's trial counsel.

court, you have the right to appeal this conviction. You have a court-appointed attorney now. I know you don't have the money to hire an attorney. But if you wish to appeal this case, the [c]ourt can appoint somebody to handle the appeal. Do you understand that?

A.         I do.

Q.         *And do you wish to appeal this case?*

A.         *No.*

Q.         *Are you sure?*

A.         *Positive.*

Q.         That is a decision that you have consulted with Ms. Smith about; is that correct?

A.         That is.

Q.         *And you also have the right not to appeal the case. It's your call. But if you choose not to, then there are consequences. You can't then later change your mind.*

A.         I understand this. I do.

Q.         Okay. So, you have made that decision of your own freewill?

A.         No, sir. [sic]

Q.         Has anyone intimidated you into making this decision? Or promised you anything to get you to make this decision?

A.         No, not at all.

Q .                          All right.

BY THE COURT:                Ms. Smith, are you aware of anything that the [c]ourt ought to know insofar as whether I accept her decision not to appeal?

BY MS. SMITH:                No, Your Honor. She actually indicated immediately after the appeal, [sic] that she was not looking to proceed. I gave her several days, roughly [ten] days now I think, to talk [sic] about it. I went in to talk to her yesterday at the jail. And she told me that she was not surprised of the verdict. She wasn't shocked at the verdict. She knew then she didn't want to appeal. She still chooses not to appeal. She understands that [the s]upreme [c]ourt is going to, and I quote, pull the transcripts and make a decision on that, end quote. And that was her basis.

BY THE COURT:                All right. Thank you, Ms. Griffin [sic]. Ms. Clark, the [s]upreme [c]ourt has required that on matters like this, that there be a record made of this. And I have to make the determination that Ms. Griffin has knowingly and intelligently waived the right to appeal. And I've talked to her this morning. And I've talked to her counsel. *And the [c]ourt is of the opinion that she has in fact knowingly and intelligently waived any desire to appeal this conviction.* And this will be of the record. The case ends at this point. Unless there's anything further by the State on this matter or by the [d]efense, then I'm going to allow Ms. Griffin to be taken back to the Lowndes County Adult [D]etention [C]enter.

BY MS. CLEMONS[10]:          Your Honor, just based on what Ms. Smith just told the [c]ourt -- and I'm sure Ms. Smith told Ms. Griffin this. But that the basis of an appeal is

---

[10] Ms. Clemons represented the State at trial.

33

not solely on transcripts. That, you know, attorneys for both sides have the opportunity to submit briefs arguing before the [c]ourt. And I'm sure that was explained to Ms. Griffin. I just want to make sure.

BY THE COURT: Is that right?

BY MS. SMITH: It was, Your Honor. I went over in detail with her exactly how the process works.

BY THE COURT: You would write a brief or the indigent counsel folks would write a brief saying the [j]udge messed up. He didn't give this jury instruction. Or he should have sustained this. Or he shouldn't have let this in. That kind of thing. And she's all - - . . . . Ms. Griffin, you're all aware of that; is that correct?

A. Yes, sir.

Q. Okay. All right.

BY MS. SMITH: Your Honor, I would ask that the court reporter transcribed [sic] this and place it in the file?

BY THE COURT: This will be. Today's hearing will be transcribed. I mean, and the [c]ourt -- I think I noted when I sentenced Ms. Griffin, Ms. Griffin is not dumb. She's an educated lady. *So, the [c]ourt is satisfied that she is knowingly, voluntarily, and intelligently waiving the right to appeal.* All right. Good luck to you, Ms. Griffin. You take care of yourself.

(Emphasis added).

¶63. After the hearing, the circuit court entered the following order on March 28, 2013:

THIS matter is before the [c]ourt after the [d]efendant has been convicted and

34

sentenced for the crime of aggravated assault in the above styled case. The [c]ourt has denied her request for a new trial or judgment not withstanding the verdict. The [d]efendant was brought to [c]ourt this day so that the [c]ourt could explain her right to appeal her conviction.

The [c]ourt explained to the [d]efendant her right to appeal and the [c]ourt informed her that if she could not afford to pay the costs of an appeal, the [c]ourt would allow the [d]efendant to appeal as a pauper. The [d]efendant indicated she understood the right to appeal her conviction.

Thereafter, the [d]efendant indicated that she did not wish to appeal her conviction. The [c]ourt apprised the [d]efendant of the consequences of her decision not to appeal her conviction. She indicated that she was making the decision not to appeal of her own volition and that she understood the consequences of her decision. The [d]efendant indicated that she had not been threatened or promised anything in exchange for her decision. *Accordingly, the [c]ourt finds that the [d]efendant's decision to waive any appeal of her conviction was knowingly, voluntarily and intelligently made.* The [c]ourt reporter is hereby [o]rdered to transcribe today's hearing and place a copy of said hearing in the file. Moreover, the [c]lerk of this [c]ourt is hereby [o]rdered to send a copy of this [o]rder to the parties at their place of business or residence.

(Emphasis added).

¶64. On August 27, 2013, Griffin filed a "Motion for Appointment of Appellate Counsel and for Other Relief." The gravamen of the motion, quoted verbatim, alleged:

Defendant is indigent and was represented at trial by appointed counsel who did not perfect an appeal and defendant remains indigent and cannot hire counsel nor pay filing fees nor pay the costs of the preparation of the record for appeal.

. . . .

Defendant respectfully requests the appointment of appellate counsel pursuant to Rule 6 of Miss. Rules of Appellate Procedure, preferably the Indigent Appeals Division of the Office of State Public Defender.

. . . If it has been more than thirty days from the date that [j]udgment was entered herein, or more than thirty days since [the] denial of post[-]trial motion[s], [d]efendant prays for authority from the court to file [an] appeal out of time pursuant to Rule 4 of the Miss. Rules of Appellate Procedure.

¶65. On September 17, 2013, the circuit court denied Griffin's motion via the following order:

> Came on to be heard in the above styled and numbered cause, the [d]efendant's, Lori Griffin, Motion for Appointment of Appellate Counsel and for Other Relief. After reviewing the [d]efendant's motion, sentencing order, and the order denying the [d]efendant's motion for JNOV[,] the [c]ourt finds that it is without the authority to grant the [d]efendant's request.
>
> "A trial court has the authority to grant a criminal defendant's motion for an out-of-time appeal if grounds exist and if [sic] the request is brought under the Mississippi Uniform Post-Conviction Collateral Relief Act (hereinafter referred to as UPCCRA)." *Dorsey v. State*, 986 So. 2d 1080, 1083 [(¶10)] (Miss. Ct. App. 2008) (citing Miss. Code Ann. § 99-39-5(l)(h) (Rev. 2008)). The [d]efendant's motion does not invoke said act[,] nor does it meet the necessary pleading requirements under the UPCCRA.
>
> According to Mississippi Rule[] of Appellate Procedure 4(a), a notice of appeal should be filed "within thirty days of the date after the entry of the judgment or order appealed from." M.R.A.P. 4(g) [sic]. The Mississippi Rules of Appellate Procedure further provide that the trial court may grant an extension upon motion filed not later than thirty days after the expiration of the prescribed time for taking an appeal. M.R.A.P. 4(g). While this [c]ourt has no issues with, or objections to, the [d]efendant seeking an out-of-time appeal, the [d]efendant has missed the deadlines. In this case, the proper remedy for the [d]efendant is to seek leave to file an out-of-time appeal from the Supreme Court of Mississippi under Rule 2(c) of the Mississippi Rules of Appellate Procedure, which gives them authority to suspend the rules governing appeals, "in the interest of expediting decision, or for other good cause shown." M.R.A.P. 2(c).
>
> IT IS THEREFORE ORDERED that this motion be and the same is hereby denied. The [c]ircuit [c]lerk is directed to send a copy of this order to all parties.

36

¶66. On May 22, 2014, Griffin filed with the Mississippi Supreme Court a "Motion for Out of Time Appeal and for Appointment of Appellate Counsel." On June 20, 2014, the supreme court dismissed Griffin's motion, without prejudice, to give her an opportunity to file a PCR petition in the circuit court.

¶67. On July 11, 2014, Griffin filed her "Post Conviction Petition for Out of Time Appeal, Appointment of Appellate Counsel and for Other Relief (PCR)" with the circuit court. This was a fill-in-the-blank, check-the-appropriate-box form motion. Griffin filled in a blank advising that she "was convicted of aggravated assault in a jury trial on March, 2013 [sic], in Case Number 2010[-]0013 CR1K" and checked the box that reads: "Petitioner is indigent and *was represented at trial by appointed counsel who did not perfect an appeal* and [p]etitioner remains indigent and cannot hire counsel nor pay filing fees nor pay the costs of the preparation of the record for appeal." (Emphasis added). Griffin also alleged in paragraph number seven of her PCR petition that she had "*done nothing to delay the perfection of [her] appeal.*" (Emphasis added).

¶68. On September 4, 2014, the circuit court—without any hearing or notice to the State, and despite its March 28, 2013 findings that Griffin had "*in fact knowingly and intelligently waived any desire to appeal [her] conviction*"—entered the following order:

> Came on to be heard this day the above styled and numbered post conviction matter; and the [c]ourt, after having reviewed the record of proceedings in the trial court, *and the [c]ourt, having taken judicial notice that the [p]etitioner seeks to file an [o]ut-of-[t]ime [a]ppeal of her conviction in Lowndes County Criminal Cause Number 2010-0013-CR1K, finds that she should be granted leave to appeal.* The [c]ourt further finds that the [p]etitioner has requested to

37

appeal in forma pauperis, and having reviewed the poverty affidavit previously filed, the [c]ourt does hereby grant this request. Petitioner's trial counsel, the Honorable Donna Smith, is to have twenty (20) days from the date of this order to perfect the appeal of Lowndes County Criminal Cause Number 2010-0013-CR1K, then to file an order substituting the Office of Indigent Appeals.

The [c]ircuit [c]lerk is directed to file a copy of this order in Lowndes County Criminal Cause Number 2010-0013-CR1K.

IT IS THEREFORE ORDERED, that the [p]etitioner's Motion to Appeal is granted. The [c]ircuit [c]lerk is directed to send a copy of this [o]rder to all parties, including the Honorable Donna Smith, and to the Mississippi Supreme Court.

(Emphasis added).

¶69. Griffin filed her notice of appeal on September 16, 2014. The order of the circuit court denying her post-trial motion was filed on March 27, 2013.

¶70. "This Court must remain mindful of questions relating to jurisdiction and should, if appropriate, raise such issues on its own motion." *King v. City of Richland*, 856 So. 2d 667, 668 (¶2) (Miss. Ct. App. 2003) (citation omitted). Rule 4(a) of the Mississippi Rules of Appellate Procedure provides that a notice of appeal shall be filed within thirty days after the date of entry of the judgment or order appealed from.

¶71. Here, Griffin failed to timely file a notice of appeal. In fact, as shown by the colloquy with the circuit court on March 28, 2013, Griffin specifically stated that *she did not want to appeal her conviction.* The circuit court advised her at that time that she had a right to appeal and that an attorney could be appointed to represent her on appeal. The circuit court, Griffin's trial counsel, and the prosecutor all informed her how the appeal process would

work and the arguments that could be made on appeal on her behalf. Yet, she chose not to pursue an appeal.

¶72. It is clear from this record that Griffin failed to timely file her notice of appeal because she voluntarily decided not to appeal. After she missed the deadline, she could obtain relief only through the post-conviction-relief process, and only then, if she could prove that her failure to timely appeal was not her fault. Yet, the circuit court granted her relief knowing it was her fault because, at the time the circuit court granted Griffin the right to appeal, it had previously found that she had voluntarily given up her right to appeal. How could her failure to timely appeal not be her fault? Then, in her sworn PCR petition, Griffin lied when she alleged that she had done nothing to delay her appeal. It seems abundantly clear to me that Griffin was judicially estopped from alleging in her PCR petition that she had done nothing to delay or prevent the timely filing of her notice of appeal, and since she was estopped, she did not, and could not, meet the requirements for obtaining permission through the post-conviction-relief process for an out-of-time appeal.

¶73. The majority's finding that the State cannot, in this appeal, assert that the circuit court lacked jurisdiction to grant the out-of-time appeal because it did not appeal the judgment of the circuit court is untenable for at least four reasons, one of which I have already discussed: Griffin was judicially estopped from attempting to prove entitlement to such relief. The second reason is the circuit court did not give notice to the State, as it was required by law to do if it were not going to summarily dismiss Griffin's PCR petition, which is what the

circuit court should have done. *See* Miss. Code Ann. § 99-39-11 (Rev. 2015).[11]

¶74.    The third reason is that the doctrine of res judicata precluded a finding that Griffin was entitled to an out-of-time appeal. Therefore, Griffin did not, and could not, meet her burden in the post-conviction-relief proceeding that she initiated when she filed her PCR petition, seeking permission to file an out-of-time appeal. She was required to prove entitlement to an out-of-time appeal. However, in prior proceedings in her case, the court had found that she had knowingly, voluntarily, and intelligently waived her right to appeal her conviction. On April 27, 2013, Griffin's right and entitlement to appeal her conviction expired. She could not thereafter establish—during a post-conviction-relief proceeding—that she was entitled to an out-of-time appeal because in order to establish entitlement, she had to prove that the reason she had failed to timely appeal was the fault of someone else. The circuit court had found in its March 28, 2013 order that the reason no appeal was being taken was because Griffin did not want to appeal, not because her attorney was unwilling to file

---

[11] Section 99-39-11 provides in pertinent part:

(2) If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified.

(3) If the motion is not dismissed under subsection (2) of this section, *the judge shall order the state to file an answer or other pleading* within the period of time fixed by the court or to take such other action as the judge deems appropriate . . . .

(Emphasis added).

an appeal for her. Since the court's March 28, 2013 order was not appealed, the court's finding in that order had become res judicata by the time Griffin filed her PCR petition on July 11, 2014.

¶75. The fourth reason the majority's position is untenable is because predicating this Court's jurisdiction on the failure of the State to appeal an order that the circuit court issued without judicial underpinning is tantamount to saying this Court is obligated to salute the extrajudicial action of the circuit court, notwithstanding a plethora of precedent that an appellate court is required to note its own lack of jurisdiction even if not raised by the parties. *See Bailey v. Chamblee*, 192 So. 3d 1078, 1081-82 (¶11) (Miss. Ct. App. 2016).

¶76. I want to be clear. I am not contending that the circuit court did not have jurisdiction to entertain Griffin's PCR petition. It did. My contention is that the circuit court did not have the authority to grant the relief that it did because no facts or evidence was presented warranting such relief. Trial courts are not authorized to grant relief in post-conviction-relief proceedings simply because they want to, as we follow the rule of law.

¶77. If the evidence in the post-conviction-relief proceeding had been in dispute as to whether Griffin's failure to appeal was due to her fault or the fault of someone else and the circuit court had ruled in her favor and allowed the out-of-time appeal, I would agree with the majority. But that is not the case. Moreover, based on the record before us, had the circuit court ordered the State to file an answer or other pleading, as it was required by section 99-39-11(3) to do, before ruling on Griffin's PCR petition, we probably would not

be considering Griffin's appeal, for I cannot imagine that the State would not have filed the same response as it did in this appeal when we requested supplemental briefing on the question whether the trial court properly granted an out-of-time-appeal. I cannot fathom how the circuit court could have found that Griffin's failure to timely appeal her conviction was not solely her fault. Any review of an order to the contrary would require reversal because Griffin presented nothing to bring into question her previous waiver of her right to appeal, leaving only a question of law as to her entitlement to an out-of-time appeal in the face of her waiver. An appellate court's review of questions of law presented in post-conviction-relief matters is de novo. *Rowland v. State*, 42 So. 3d 503, 506 (¶8) (Miss. 2010).

¶78. I know of no law that precludes us—as part of our quest to determine our own jurisdiction—from taking judicial notice of the companion post-conviction-relief proceedings in the trial court. It is clear that the circuit court's order permitting Griffin to file an out-of-time appeal was entered in contravention of section 99-39-11(3), setting forth the process that must be undertaken by the trial court if it does not summarily dismiss a PCR motion, and Mississippi Code Annotated section 99-39-23(7) (Rev. 2015), providing that "[n]o relief shall be granted under [the UPCCRA] unless the petitioner proves by a preponderance of the evidence that he is entitled to the relief." It is interesting, puzzling, and noteworthy that the circuit court, in its September 4, 2014 order granting Griffin an out-of-time appeal, "took judicial notice" that Griffin sought permission to file an out-of-time appeal.

¶79. Our case law, just as our statutory law, is clear as to the burden a movant must meet

before being granted permission to file an out-of-time appeal. In *Dorsey*, 986 So. 2d at 1083 (¶10), we held: "A trial court has the authority to grant a criminal defendant's motion for an out-of-time appeal if grounds exist and the request is brought under the [UPCCRA]." Citing *Harris v. State*, 624 So. 2d 100, 101 (Miss. 1993), the Mississippi Supreme Court has stated:

> To prove his right to an out-of-time appeal, the movant must show by a preponderance of the evidence that he asked his attorney to appeal within the time allowed for giving notice of an appeal. Moreover, the movant must show that the attorney failed to perfect the appeal and that such failure was through no fault of the movant.

*Dickey v. State*, 662 So. 2d 1106, 1108 (Miss. 1995). Our supreme court has also stated: "[I]t is settled that a defendant desiring an out-of-time appeal must, at the very least, show that the failure timely to perfect an appeal was through no fault of his own." *Fair v. State*, 571 So. 2d 965, 967 (Miss. 1990).

¶80. There is not a scintilla of evidence in this record—and Griffin does not allege in her PCR petition—that after the March 28, 2013 hearing and prior to the April 27, 2013 deadline for filing an appeal, she changed her mind and asked her attorney to pursue the appeal, but the attorney refused. Therefore, there was nothing on which the circuit court could have predicated relief.

¶81. This Court always has the authority to determine its jurisdiction, and to suggest, as does the majority, that Griffin's appeal is timely because the State did not appeal from a prior post-conviction-relief order granting Griffin the right to appeal when the circuit court had no authority to grant that right is beyond my ability to discern.

43

¶82. Appellate courts have the authority pursuant to Rule 2(c) of the Mississippi Rules of Appellate Procedure to suspend the rules for good cause shown and allow out-of-time appeals to proceed. However, based on this record, I cannot find any good cause for suspending the rules and allowing this appeal to proceed, as I cannot find that Griffin's failure to timely perfect her appeal was through no fault of her own or that justice demands that we hear it. As noted, on March 28, 2013, the circuit court conducted a hearing in which the judge clearly explained to Griffin that she had a right to appeal. Griffin voluntarily abandoned her right to appeal and has not established that her failure to timely appeal was through no fault of her own.

¶83. For the reasons discussed, I dissent. If any appeal should be dismissed, this is one. I am afraid that the bench, bar, and public generally will view today's decision as a wink at the rule of law. I hope I am wrong.

**CARLTON, GREENLEE AND WESTBROOKS, JJ., JOIN THIS OPINION.**